GROSS, C.J.
 

 Kingsway Amigo Insurance Company appeals a final summary judgment entered in favor of Ocean Health, Inc., by a county court in Broward County. The county court certified the following question as an issue of great public importance pursuant to section 34.017, Florida Statutes (2010):
 

 MAY A PIP INSURER NEVERTHELESS ELECT TO USE THE MEDICARE PART B FEE SCHEDULES SET FORTH IN FLA. STAT. § 627.736(5)(a)(2) WHEN THE SUBJECT PIP POLICY SPECIFIES THAT THE PIP INSURER WILL PAY 80% OF MEDICALLY NECESSARY EXPENSES?
 

 This court accepted discretionary review pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(A). We answer the certified question in the negative and affirm the decision of the county court.
 

 Kingsway is a motor vehicle insurer. In April 2008, its insured was involved in a motor vehicle accident. The applicable policy, with effective dates of March 29, 2008, through September 29, 2008, provided PIP benefits. The insured assigned her PIP benefits to Ocean Health in return for chiropractic treatments. Ocean Health submitted bills directly to Kingsway. After applying the deductible, Kingsway paid the bills for dates of service from April 16, 2008, through June 26, 2008, at 80% of 200% of the Medicare Part B fee schedule. This amount paid was less than payment at 80% of the billed amount. In making payment, Kingsway relied upon subsection 627.736(5)(a)2., Florida Statutes (2008), which went into effect on January 1, 2008.
 
 [1]
 

 
 *65
 
 The applicable insurance policy provided that:
 

 The Company will pay in accordance with the Florida Motor Vehicle No Fault Law, as amended, to or for the benefit of the injured person:
 

 1. 80% of medical expenses;
 

 Medical expenses means those expenses that are required to be reimbursed pursuant to Florida Motor Vehicle No Fault Law, as amended, and that are reasonable expenses for medically necessary ... services.
 

 Section 627.736, Florida Statutes (2008), sets out the provisions for “[rjequired personal injury protection benefits” and provides in pertinent part:
 

 (1) REQUIRED BENEFITS. — Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection ... as follows:
 

 (a)
 
 Medical benefits.
 
 — Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services.
 
 [2]
 

 Expanding on the subsection (1) requirement that the statute requires reimbursement of “reasonable expenses,” the 2007 version of the statute provided a framework for the concept of “reasonableness” in subsection 627.736(5)(a):
 

 (5) CHARGES FOR TREATMENT OF INJURED PERSONS.—
 

 (a)l. Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered .... In no event, however, may such a charge be in excess of the amount the person or institution customarily charges for like services or supplies. With respect to a determination of whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, and reimbursement levels in the community and various federal and state medical fee schedules applicable to automobile and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.
 

 In 2007, subsection 627.736(5)(a) was amended
 
 [3]
 
 to add subsections (5)(a)2. through 5., which in pertinent part provide:
 

 2. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
 

 f. For all other medical services, supplies, and care, 200 percent of the allowable amount under the participating physicians schedule of Medicare Part B. However, if such services, supplies, or care is not reimbursable under Medicare Part B,
 
 *66
 
 the insurer may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers’ compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care is provided. Services, supplies, or care that is not reimbursable under Medicare or workers’ compensation is not required to be reimbursed by the insurer.
 

 5. If an insurer limits payment as authorized by subparagraph 2., the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured’s personal injury protection coverage due to the coinsurance amount or maximum policy limits.
 

 Subsection 627.7407(2), Florida Statutes (2008), which is titled “Application of the Florida Motor Vehicle No-Fault Law,” provides for incorporation of the new law into policies, as follows:
 

 (2) Any personal injury protection policy in effect on or after January 1, 2008, shall be deemed to incorporate the provisions of the Florida Motor Vehicle No-Fault Law, as revived and amended by this act.
 

 (3) An insurer shall continue to use the personal injury protection forms and rates that were in effect on September 30, 2007, until new forms or rates are used as authorized by law.
 

 In a thoughtful, detailed order, the trial judge entered final summary judgment in favor of Ocean Health and certified the above question. The court reviewed the statutory scheme set forth above, including the 2007 amendments, and came to this conclusion:
 

 [T]he new PIP statute provides both a mandatory and permissive method of reimbursement. Giving effect to both provisions means that an insurer is required to pay 80% of all reasonable expenses, but has the safe-harbor option to limit its reimbursement obligation and pay a fixed fee for individual services. Because the new PIP statute in effect since January 1, 2008[,] now contains mandatory and permissive language on the amounts that insurance will pay for medical claims, it is important for the PIP insurer to clearly and unambiguously choose and identify its selected payment methodology.
 

 The trial court then reviewed the language in the policy and found that the policy established an agreement to reimburse 80% of medically necessary expenses as provided in subsection 627.736(l)(a) rather than the safe harbor amount found in subsection 627.736(5)(a)2.f., which the policy did not mention. It relied on case law holding that, when a policy provides for coverage greater than that required by statute, the terms of the policy control.
 

 A trial court’s ruling on a motion for summary judgment posing a pure question of law is subject to de novo review.
 
 Major League Baseball v. Morsani,
 
 790 So.2d 1071, 1074 (Fla.2001).
 

 “[Ljegislative intent is the polestar that guides a court’s statutory construction analysis.”
 
 Knowles v. Beverly Enters.-Fla., Inc.,
 
 898 So.2d 1, 5 (Fla.2004). To discern legislative intent, a court first looks to the statute’s plain language.
 
 See Borden v. E.-European Ins. Co.,
 
 921 So.2d 587, 595 (Fla.2006). If a statute is clear and unambiguous, “there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.”
 
 Holly v. Auld,
 
 450
 
 *67
 
 So.2d 217, 219 (Fla.1984) (quoting
 
 A.R. Douglass, Inc. v. McRainey,
 
 102 Fla. 1141, 137 So. 157, 159 (1931)). A court may not “construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications.”
 
 Id.
 
 (quoting
 
 Am. Bankers Life Assurance Co. of Fla. v. Williams,
 
 212 So.2d 777, 778 (Fla. 1st DCA 1968)) (emphasis removed). “Further, words must be given their plain meaning and statutes should be construed to give them their full effect,”
 
 Jones v. State,
 
 966 So.2d 319, 326 (Fla.2007) (citation omitted), and “[w]here possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act,”
 
 Knowles,
 
 898 So.2d at 9 (quoting
 
 Woodgate Dev. Corp. v. Hamilton Inv. Trust,
 
 351 So.2d 14, 16 (Fla.1977)) (alteration in
 
 Knowles)
 
 (emphasis removed).
 

 We agree with the trial court that these statutes are unambiguous and that their plain language allows an insurer to choose between two different payment calculation methodology options. Significantly, subsection 627.736(5)(a)2. provides that the insurer “may limit reimbursement,” language that indicates that this option choice is
 
 not
 
 mandatory; subsection 627.736(5)(a)5. states “[i]f an insurer limits payment as authorized by subparagraph 2.,” language that anticipates that an insurer will make a choice.
 

 The applicable policy made no reference to the permissive methodology of subsection 627.736(5)(a)2. The policy cites the No-Fault Act, states it will pay “80% of medical expenses,” and defines medical expenses as those that it is required to pay “that are reasonable expenses for medically necessary ... services.” That is the language of subsection 627.736(l)(a), which is amplified by subsection 627.736(5)(a)l. The policy does not say it will pay 80% of 200% of Medicare Part B Schedule as provided in subsection 627.736(5)(a)2.
 

 We reject Kingsway’s argument that, because the PIP statute is incorporated into the policy, it had the unilateral right to ignore the only payment methodology referenced in the policy. Similar reasoning was rejected by the fifth district in
 
 State Farm Florida Insurance Co. v. Nichols,
 
 21 So.3d 904 (Fla. 5th DCA 2009), a case involving a claim under a homeowner’s policy. We adopt the trial court’s analysis of
 
 Nichols
 
 as it applies to this case:q
 

 In
 
 Nichols,
 
 the insurer argued that it was entitled to pay in accordance with the limitation language in a statute that was not specifically mentioned in the policy, while at the same time the policy provided a means to determine payment. The [fifth district], however, considered the “may limit” language appearing in the sinkhole insurance statute to be permissive. Similarly, the language “may limit” appears in the new No-Fault statute. As in
 
 Nichols,
 
 the insurance policy in this case expressly states that the insurance company will pay for claims pursuant to a particular methodology (80% of incurred medically necessary expenses). The “reasonable amount” methodology corresponds to the mandatory language contained in § 627.736(l)(a) of the new PIP statute. Because the new PIP statute also states that a PIP insurer
 
 may
 
 apply the new fee schedule listed in [subsection 627.736(5)(a)2,] this provision is permissive, not mandatory, and the policy language that requires payment in accordance with the reasonable amount methodology specified in [subsection 627.736(l)(a) ] is “not in conflict with the [permissive methodology set forth in the new] statute and is [therefore] binding on the parties to the in
 
 *68
 
 surance contract.”
 
 Nichols,
 
 21 So.3d at 905. If the [Insurer] wanted to take advantage of the permissive fee schedule, it should have clearly and unambiguously selected that payment methodology in a manner so that the insured patient and health care providers would be aware of it.
 
 Maryland Cas[.] Co[.] v. Murphy,
 
 342 So.2d 1051 (Fla. 3d DCA 1977) (in order to rely on statutory provisions allowing an insurance company to prohibit assignment of benefits, insurance company was required to include a provision to that effect in its insurance policy). In both
 
 Nichols
 
 and the instant case, the insurer failed to reference in the policy or anywhere else the permissive language that was contained in the statute.
 

 The crux of the issue is whether or not the policy language that requires payment is in conflict with the statute. As in
 
 Nichols,
 
 the language contained in this contract for insurance sold by Kingsway ... is not in conflict with the statute and is therefore binding on the parties to the insurance contract. An insurance company is not precluded from offering greater coverage than that required by statute.
 
 See Wright v. Auto-Owners Ins[.] Co.,
 
 739 So.2d 180 (Fla. 2d DCA 1999) (policy provision requiring payment in accordance with the PIP statute should not be construed to limit coverage to the minimum amount authorized by the PIP statute). These cases are consistent with the result reached in
 
 Nichols,
 
 because they confirm that when the insurance policy provides greater coverage than the amount required by statute, the terms of the policy will control.
 

 The requirement that a PIP policy specify the applicable payment methodology is consistent with the requirement that a subsection 627.736(5)(d) health insurance claim form and subsection 627.736(10)(b)3. demand letter specify “each exact amount” owed.
 
 See MRI Assocs. of Am., LLC v. State Farm Fire & Cas. Co.,
 
 61 So.3d 462 (Fla. 4th DCA 2011). Such precision is not possible where the payment calculation methodology is in doubt.
 

 Affirmed.
 

 HAZOURI and CIKLIN, JJ., concur.
 

 [1]
 

 .
 
 See
 
 Ch. 2007-324, §§ 20, 23, Laws of Fla.
 

 [2]
 

 . This statutory language existed prior to and after the amendments to section 627.736 created by Chapter 2007-324.
 
 See
 
 § 627.736(1), Fla. Stat. (2007).