CORTINAS, J.
This appeal presents identical certified questions submitted in two Personal Injury Protection (“PIP”) cases. The defendant in each case, Geico Indemnity Company (“Geico”), had tendered payment to Virtual Imaging, LLC (“Virtual Imaging”) for MRI services provided to Rafael Bojos and Merelis Gomez (the “Insureds”) in accordance with separate automobile insurance policies. Virtual Imaging objected to Geico’s determination of the amount due under the policies. In each case, the county court entered summary judgment in favor of the plaintiff, Virtual Imaging. On appeal, the cases were consolidated, and the county court certified the following question as a matter of public importance:
May an insurer limit provider reimbursement to 80% of the schedule of maximum charges described in F.S. 627.736(5)(a) if its policy does not make a specific election to do so?
We answer the certified question in the negative.
Within Florida’s Motor Vehicle No-Fault Law, sections 627.730 — 627.7405, Florida Statutes (2008), is the section governing PIP coverage, section 627.736 (the “PIP statute”). The PIP statute requires insurers to pay “[ejighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services.” § 627.736(l)(a). In 2007, the Legislature amended the PIP statute to incorporate Medicare fee schedules. Section 627.736(5)(a)(2)(f) provides that an insurer may limit reimbursement to providers of MRI services to 80 percent of “200 percent of the allowable amount under the participating physicians schedule of Medicare Part B.” Relying on the Medicare fee schedule, Geico reimbursed Virtual Imaging for MRI services provided to the Insureds in the amounts of $1,014.46 and $975.50, respectively. Virtual Imaging disputed the reimbursement, arguing that Geico was obligated under the policies to pay 80% of the amount billed, or $1400 for *57 each of the Insureds. In support of this view, Virtual Imaging points to the language in each policy indicating “the Company [Geico] will pay ... 80% of medical expenses,” defining “medical expenses” as “reasonable expenses for necessary medical, surgical, [and] X-ray ... services.”
Virtual Imaging points this Court to two cases, one of which is directly on point. In Kingsway Amigo Insurance Co. v. Ocean Health, Inc., 63 So.3d 63, 64 (Fla. 4th DCA 2011), an insurance company, relying on section 627.736(5)(a)(2)(f), paid medical bills at 80% of 200% of the Medicare Part B schedule. This amount was less than 80% of the amount billed by the service provider. The Fourth District found that the language of the policy controlled, and that “[t]he applicable policy made no reference to the permissive methodology of subsection 627.736(5)(a)(2).” Id. at 67. In making its ruling, the court adopted the analysis found in State Farm Insurance Co. v. Nichols, 21 So.3d 904 (Fla. 5th DCA 2009). In Nichols, which involved homeowner’s insurance, “the insurer argued that it was entitled to pay in accordance with the limitation language in a statute that was not specifically mentioned in the policy, while at the same time the policy provided a means to determine payment.” Kingsway, 63 So.3d at 67. The court in Nichols rejected this argument. In Kingsway, the court similarly ruled that “[i]f the [Insurer] wanted to take advantage of the permissive fee schedule, it should have clearly and unambiguously selected that payment methodology in a manner so that the insured patient and healthcare providers would be aware of it.” Id. (internal citations omitted).
This Court is faced, as were the courts in Kingsway and Nichols, with a dispute regarding whether there is a conflict between the language in the policies and the language in the PIP statute. Geico argues that its payment to Virtual Imaging was consistent with both the PIP statute and the policies issued to the Insureds. According to Geico, the permissive language of section 627.736(5)(a)(2) is present in the policies for two reasons. First, section 627.7407(2) states that “[a]ny personal injury protection policy in effect on or after January 1, 2008, shall be deemed to incorporate the provisions of the Florida Motor Vehicle No-Fault Law, as revived and amended by this act.” (emphasis added). Consequently, the policies must be read so as to include the provision stating that Geico “may limit reimbursement to 80 percent” of the requisite amount on the Medicare Part B fee schedule. Second, the policies themselves clearly state that reimbursements will be made “in accordance with the Florida Motor Vehicle No-Fault Law, as amended.... ” Therefore, Geico argues, no conflict between the statute and the policies arises. Both the policies and the statute clearly state that reimbursements will be made for 80% of reasonable medical expenses, while section 627.736(5)(a)(2), which is incorporated into the policies by language found both in the policies and the PIP statute, clarifies that Geico may determine the specific amount constituting “reasonable medical expenses” by referring to the Medicare Part B fee schedule. Geico asks this Court to rule that Kingsway was wrong to find that the PIP statute “allows an insurer to choose between two different payment calculation methodology options.” Kingsway, 63 So.3d at 67. According to Geico, there is only one methodology: 80% of reasonable medical expenses.
This argument is at best flawed. In this case, Geico was faced with at least two ways of reimbursing reasonable medical expenses: (a) reimbursing Virtual Imaging for 80% of the amount billed, or (b) reimbursing them for 80% of 200% of the amount listed on the Medicare fee sched *58 ule. When two distinct payment amounts are possible under the statute, it is misleading to insist that there is only one calculation methodology being used. Furthermore, as section 627.736(5)(a)(2) provides that insurers “may” consult the Medicare fee schedule, it follows that, under the statute, insurers who choose not to do so have recourse to some alternative means for determining a reimbursement amount. This is clearly, as Kingsway indicated, affording insurers a choice between two different payment calculation methodologies.
Geico’s position is further weakened by the ambiguities that necessarily result from incorporating section 627.736(5)(a)(2) into the policies under section 627.7407(2). The policies state that Geico will pay 80% of all reasonable medical expenses. If, as Geico insists, we read them also to state that Geico will pay 80% of 200% of the maximum allowable amount under the physician fee schedule of Medicare Part B, we must reconcile the reference to “reasonable medical expenses” with the reference to the Medicare fee schedule. It is possible to conclude that “200% of the maximum allowable amount under the fee schedule” is being used to define “reasonable medical expense.” It is also, however, possible to conclude that there are simply two alternatives present in the policies: that Geico will either pay 80% of reasonable medical expenses, or that it will pay 80% of 200% of the maximum allowable amount under the fee schedule. Because the policies nowhere expressly define the former with reference to the latter, Geico’s interpretation is not the only logical or necessary reading of the text. Furthermore, even if the logical equivalency of the two methods were established, the permissive language of section 627.736(5)(a)(2) itself creates ambiguity. A provision indicating that an insurer may limit reimbursements leaves unclear whether this option will be exercised, and therefore provides no indication to policyholders as to a crucial aspect of their policies: the amount the insurer will pay for necessary medical services.[1] A policy indicating that an insurer may distribute reimbursements according to one method without clarifying alternative methods or identifying the factors to be considered in selecting among methods is ambiguous. Ambiguities in insurance contracts are resolved in favor of the insured.[2] See, e.g., State Farm Mutual Auto. Ins. Co. v. Menendez, 70 So.3d 566, 570 (Fla.2011). Therefore, even if Geico were correct that section 627.736(5)(a)(2) is incorporated into the policies, the resulting ambiguity regarding which method Geico would use in determining a reimbursement amount supports the conclusion that Geico should have reimbursed Virtual Imaging for the greatest amount possible within the language of the policies.
We answer the certified question in the negative, and affirm the summary judgments granted by the trial court.
Affirmed.
LEVINE, Associate Judge, concurs.

. Though this action was brought by the service provider and not the policyholders, the distinction is immaterial. Virtual Imaging was an assignee beneficiary of both policyholders. An assignee "stands in the shoes of the assignor and may enforce the contract against the original obligor in his own name.” Price v. RLI Ins. Co., 914 So.2d 1010, 1013 (Fla. 5th DCA 2005) (citing Lauren Kyle Holdings, Inc. v. Heath-Peterson Constr. Corp., 864 So.2d 55, 58 (Fla. 5th DCA 2003)).

. As has been noted, Virtual Imaging stands in the shoes of the policyholders, and the benefit of the interpretation passes to it.