DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**USAA GENERAL INDEMNITY COMPANY,**
Appellant,

v.

**WILLIAM J. GOGAN, M.D.,** a/a/o **TARA RICKS,**
Appellee.

No. 4D16-3313

[March 14, 2018]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Daniel J. Kanner, Judge; L.T. Case No. COCE-10-016026(55).

Douglas H. Stein of Association Law Group, P.L., Miami, for appellant.

Andrew A. Harris and Nichole Segal of Burlington & Rockenbach, P.A., West Palm Beach, and Barry Aronin of LaBovick Law Group, Palm Beach Gardens, for appellee.

KUNTZ, J.

We are presented with the following question, certified by the county court, to be of great public importance:

> IN A PERSONAL INJURY PROTECTION MATTER, IS AN INSURER REQUIRED TO APPLY THE DEDUCTIBLE TO THE TOTAL BILLED AMOUNT, OR TO THE TOTAL BILL AFTER SAID BILL IS REDUCED BY ANY APPLICABLE STATUTORY REDUCTION(S) AS CONTAINED IN FLORIDA STATUTE SECTION 627.736(5)(a)(1)?

We rephrase the certified question as follows:

> PURSUANT TO SECTIONS 627.736 AND 627.739, FLORIDA STATUTES (2013), IS AN INSURER REQUIRED TO APPLY A POLICY DEDUCTIBLE TO THE TOTAL AMOUNT OF A PROVIDER'S INVOICES TO AN INSURED PRIOR TO

APPLYING ANY FEE SCHEDULE FOUND IN § 627.736, FLA. STAT.?

For the reasons explained in our opinion in *State Farm Mutual Automobile Insurance Co. v. Care Wellness Center, LLC a/a/o Bardon-Diaz*, No. 4D16-2254 (Fla. 4th DCA Mar. 14, 2018), also issued today, we answer the rephrased certified question in the negative, reverse the county court's summary judgment, and remand for further proceedings consistent with our opinion. We also certify conflict with *Progressive Select Insurance Co. v. Florida Hospital Medical Center a/a/o Jonathan Parent*, 43 Fla. L. Weekly D318 (Fla. 5th DCA Feb. 9, 2018).

*Reversed and remanded; conflict certified.*

FORST, J., concurs.
GROSS, J., dissents with opinion.

GROSS, J., dissenting.

I agree with the result reached by the Fifth District in *Progressive Select Ins. Co. v. Florida Hospital Med. Ctr. a/a/o John Parent*, No. 5D16-2333, 2018 WL 792012 (Fla. 5th DCA Feb. 9, 2018) (hereinafter *Florida Hospital a/a/o Parent*). Applying the plain language of the PIP statute in light of its history, leads to the conclusion that insurers cannot use the Medicare fee schedule to reduce providers' bills to the insured before the deductible has been satisfied.

The issue in this case is whether section 627.739(2), Florida Statutes (2010), which mandates that an insured's deductible be applied to "100 percent of the expenses and losses described in section 627.736," allows an insurer to (1) reduce a provider's claim to an amount allowed under a fee schedule found at section 627.736(5)(a)2., Florida Statutes (i.e., "200 percent of the applicable Medicare Part B fee schedule") and (2) apply the insured's unsatisfied deductible to that lower amount.[1]

Under the PIP statute, medical claims following a motor vehicle accident are processed by insurers in three distinct phases: The Deductible Phase;

---

[1] In the 2010 version of the PIP Statute, the fee schedule was set forth at subparagraph (5)(a)2. The statute was amended effective January 1, 2013, and the fee schedule is now found at subparagraph (5)(a)1. Ch. 2012-197, § 10, at 20-21, Laws. of Fla. The 2010 version of the PIP Statute applies to this case. Unless otherwise indicated, references to the Florida Motor Vehicle No-Fault Law are to the 2010 version of the statute.

2

the Benefits Phase; and the Post-Benefits Phase. The following chart demonstrates these phases:



| Deductible Phase | Benefits Phase | Post-Benefits Phase |
|---|---|---|
| $250, $500, or $1,000 | $10,000 | Max. Policy Limits Reached |
| **Insured Pays** until deductible reached | **Insurer Pays** (80%) | **Insured pays** 100% |
| **Insurer applies** deductible to: "100% of expenses & losses described in § 627.736" | **Insured Pays** co-pay (20%) | |

The insurer seeks to use the fee schedule to reduce providers' bills during the Deductible Phase. The provider argues, and the lower court agreed, that the insurer may use the fee schedule to reduce providers' bills only during the Benefits Phase, or when the insurer is actually paying the provider.

## 1. RULES OF STATUTORY CONSTRUCTION

"The first principle of statutory construction is that legislative intent must be determined primarily from the language of the statute." *Golf Channel v. Jenkins*, 752 So. 2d 561, 564 (Fla. 2000). If a statute is unambiguous, it must be given its plain and obvious meaning. *Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 66 (Fla. 4th DCA 2011). Where a statute is ambiguous and statutory construction is required, the legislative intent "is the polestar that guides" a court's inquiry. *Blish v. Atlanta Cas. Co.*, 736 So. 2d 1151, 1155 (Fla. 1999).

> In matters requiring statutory construction, courts always seek to effectuate legislative intent. Where the words selected by the Legislature are clear and unambiguous, however, judicial interpretation is not appropriate to displace the expressed intent ... It is neither the function nor prerogative of the courts to speculate on constructions more or less reasonable, when the language itself conveys an unequivocal meaning.

*Heredia v. Allstate Ins. Co.*, 358 So. 2d 1353, 1354-55 (Fla. 1978) (internal case citations omitted).

"Where possible, it is the duty of the courts to adopt that construction of a statutory provision which harmonizes and reconciles it with other provisions of the same act." *Woodgate Dev. Corp. v. Hamilton Inv. Trust*, 351 So. 2d 14, 16 (Fla. 1977). The Florida Motor Vehicle No-Fault Law should be liberally construed with any ambiguity interpreted "to effectuate the legislative purpose of providing broad PIP coverage for Florida motorists." *Malu v. Security Nat. Ins. Co.*, 898 So. 2d 69, 74 (Fla. 2005); *see generally Derius v. Allstate Indem. Co.*, 723 So. 2d 271, 274 (Fla. 4th DCA 1998). However, if the Act is not vague or ambiguous, it should not be construed in such a way as to broaden coverage. *Govan v. Int'l Bankers Ins. Co.*, 521 So. 2d 1086, 1088 (Fla. 1988).

Two statutes are at issue here: section 627.739, Florida Statutes (the "Deductible Statute") and section 627.736, Florida Statutes (the "PIP Statute").

The Deductible Statute cross-references the PIP Statute. "[A] cross-reference to a specific statute incorporates the language of the referenced statute as it existed at the time the reference was enacted, unaffected by any subsequent amendments to or repeal of the incorporated statute." Preface to Florida Statutes, at viii; *see also Overstreet v. Blum,* 227 So. 2d 197, 198 (Fla. 1969) ("the adoption of another statute by specific reference takes the second statute as it then exists, unaffected by any subsequent amendment or repeal unless a contrary intent clearly appears.").

The Deductible Statute's cross reference to the PIP Statute was inserted in 2003 and revived and reenacted in 2007 (effective 2008). Ch. 2007-324, § 15, Laws of Fla. Therefore, under *Overstreet*, this court should look to the 2007 version of the PIP Statute to determine what the Legislature intended when it directed that the deductible be applied to "expenses and losses described in section 627.736."

## 2. THE DEDUCTIBLE STATUTE (§ 627.739)

"A 'deductible' is 'a clause in an insurance policy that relieves the insurer of responsibility for an initial specified loss of the kind insured against.'" *General Star Indem. Co. v. West Florida Village Inn, Inc.*, 874 So. 2d 26, 33 (Fla. 2d DCA 2004) (quoting *Merriam-Webster's Collegiate Dictionary* 471 (deluxe ed. 1998)). "[T]he functional purpose of a deductible, which is frequently referred to as self-insurance, is to alter the point at which an insurance company's obligation to pay will ripen." *Int'l*

*Bankers Ins. Co. v. Arnone*, 552 So. 2d 908, 911 (Fla. 1989). The deductible amount is chosen by the insured and the insured is responsible for payment of claims until the deductible is satisfied. *Mercury Ins. Co. v. Emergency Physicians of Cent.*, 182 So. 3d 661, 667 (Fla. 5th DCA 2015). Once the deductible is met, the insured's right to access PIP benefits is "unlocked." *Id.*

Section 627.739 provides:

> (2) Insurers shall offer to each applicant and to each policyholder, upon the renewal of an existing policy, deductibles, in amounts of $250, $500, and $1,000. The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1).

The focus in this case is the second sentence:

> The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736.

Particularly, what are the "expenses and losses described in section 627.736" and why did the Legislature specify that the deductible amount must apply to "100 percent" of those expenses and losses.

A second consideration is the third sentence:

> After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1).

The third sentence differentiates the "expenses and losses described in section 626.736" from the "total benefits described in section 627.636(1)." The term "benefits" refers to "the payment of medical bills" by the insurer. *U.S. Sec. Ins. Co. v. Silva*, 693 So. 2d 593, 595 (Fla. 3d DCA 1997).

The second and third sentences were placed in the statute in 2003 after the Florida Supreme Court found that the previous version of the statute allowed insurers to reduce an insured's benefits by the amount of the deductible. *Arnone*, 552 So. 2d at 908. The following table compares the pre-2003 and post-2003 versions of the Deductible Statute:

5

| Deductible Statute (§ 627.739(2)) | |
|---|---|
| Pre-2003 Version | Post-2003 Version |
| Insurers shall offer to each applicant and to each policyholder ... deductibles, in amounts of $250, $500, $1,000 and $2,000, *such amount to be deducted from the benefits otherwise due* each person subject to the deduction. | Insurers shall offer to each applicant and to each policyholder ... deductibles, in amounts of $250, $500, and $1,000. The deductible amount must be applied to 100 percent of the expenses and losses described in s. 627.736. After the deductible is met, each insured is eligible to receive up to $10,000 in total benefits described in s. 627.736(1). |

Ch. 2003-411, § 9, at 31, Laws of Fla.

The Legislative History explains the change:

> The bill changes the calculation of the PIP deductible to require that *it must be applied to 100 percent of medical expenses, rather than to the current 80 percent of expenses that PIP pays.* It also changes the calculation of the PIP deductible so that the full $10,000 in PIP benefits can be obtained. This latter provision has the effect of requiring PIP to pay more than it does currently if a deductible is elected.

Senate Staff Analysis and Economic Impact Statement, CS/SB 32-A, May 15, 2003 (emphasis added). The Legislature thus clarified the statute to prevent an insurer from amplifying the effect of a deductible by injecting a reimbursement limitation into the calculation, a tactic similar to what the insurer urges in this case. As the Fifth District explained:

> The obvious intent of the Legislature was to replace the term "benefits otherwise due" with "expenses and losses" in determining what the deductible would be applied to, moving the term "benefits" to the next sentence, which discusses the insurer's liability after the deductible is satisfied. Thus, the current version of the statute provides a clear distinction between "expenses and losses" for purposes of applying the

6

deductible and "benefits" that are due to the insured after the reimbursement limitations are applied.

*Florida Hospital a/a/o Parent*, 2018 WL 792012 at *5.

3.  THE PIP STATUTE (§ 627.736)

Section 627.736 is entitled "Required personal injury protection benefits; exclusions; priority; claims."  The statutory framework provides:

(1) REQUIRED BENEFITS. – Every insurance policy ... shall provide personal injury protection to the named insured ... to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, ... as follows:

(a) Medical benefits. – Eighty percent of all reasonable expenses for medically necessary medical ... services.  ...

(b) Disability benefits.  ...

(c) Death benefits.  ...

(2) AUTHORIZED EXCLUSIONS.  ...

(3) INSURED'S RIGHTS TO RECOVERY OF SPECIAL DAMAGES IN TORT CLAIMS. ...

(4) BENEFITS:  WHEN DUE.  ...

(5) CHARGES FOR TREATMENT OF INJURED PERSONS. – (a)1.  Any physician, hospital, clinic, or other person or institution lawfully rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered ...

2.  The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:

* * *

7

> f. For all other medical services, supplies, and care, 200 percent of the applicable Medicare Part B fee schedule ....
>
> * * *
>
> 5. If an insurer limits payment as authorized by subparagraph 2., the person providing such services, supplies, or care may not bill or attempt to collect from the insured any amount in excess of such limits, except for amounts that are not covered by the insured's personal injury protection coverage due to the co-insurance amount or maximum policy limits ....

§ 627.736(1)–(5), Fla. Stat. (2007); Ch. 2007-324, §§ 13, 20, 23, Laws of Fla. (effective Jan. 1, 2008).

Subsection 627.736(1) requires an insurer to provide a minimum of $10,000 in "required benefits" to cover expenses and losses an insured sustains as a result of bodily injury sustained in a car accident. § 627.736(1)(a)–(c).

Subsection 627.736(5) covers medical "charges." Sub-paragraph (5)(a)1. mandates that a medical provider charge an "insurer and injured party" "only a reasonable amount" "for a bodily injury covered by personal injury protection." Subparagraph (5)(a)2. permits "the insurer" to "limit reimbursement" to a provider to a "schedule of maximum charges."

> The provision in the PIP statute authorizing insurers to limit reimbursements for medical services rendered pursuant to the Medicare fee schedules, which is at issue in this case, has its genesis in a series of changes the Legislature made to the PIP statute, beginning in 2001, that were designed to regulate the amount providers could charge PIP insurers and policyholders for the medically necessary services PIP insurers are required to reimburse.

*Geico General Ins. Co. v. Virtual Imaging Srvs., Inc.*, 141 So. 3d 147, 153 (Fla. 2013).

> Under section 627.736, Florida Statutes (2008), the PIP statute, an insurer may elect to calculate medical reimbursements in one of two ways: (a) it can pay a reasonable amount consistent with subsection (5)(a)1. of the

8

statute; or (b) it can elect to apply the Medicare fee schedules, as set forth in Subsection (5)(a)2. of the statute.

*Northwest Ctr. for Integrative Med. & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.*, 214 So. 3d 679, 682 (Fla. 4th DCA 2017); *see also Kingsway*, 63 So. 3d at 67 (under section 627.736, an insurer may "choose between two different payment calculation methodology options."). "Reimbursements made under section 627.736(5)(a)2. satisfy the PIP statute's reasonable medical expenses coverage mandate." *Allstate v. Orthopedic Specialists*, 212 So. 3d 973, 976 (Fla. 2017). The PIP coverage "mandate" is that the insurer "shall" reimburse eighty percent of reasonable expenses for medically necessary services." *Id.* (quoting *Virtual Imaging*, 141 So. 3d at 155).

Subparagraph 627.736(5)(a)5. prevents "balance billing," prohibiting the provider from billing or attempting to collect from the insured "any amount exceeding the payment made from the insurer." *Green v. State Farm Mutual Auto. Ins. Co.*, 225 So. 3d 229, 231 (Fla. 4th DCA 2017). If the provider's charge exceeds the statutory "maximum charge," and the insurer "limits payment" to the statutory "maximum charge" allowed by the fee schedule, even if the provider's charge is reasonable, the provider "may not bill or attempt to collect from the insured any amount in excess of such [fee schedule] limits." § 627.736(5)(a)5.

### 4. READING THE PIP AND DEDUCTIBLE STATUTES TOGETHER

Under the Deductible Statute, the insurer must apply the deductible "to 100 percent of the expenses and losses described in § 627.736." After the deductible is exhausted, the insured "is eligible to receive up to $10,000 in total benefits described in § 627.736(1)."

As used in the statute, the term "expenses and losses" is something different from "benefits" required by law. Where it is applicable, the Medicare Fee Schedule is a limitation on benefits, not on a provider's charge—an "expense" or "loss" that the insured becomes obligated to pay before the deductible is satisfied.

While the phrase "expenses and losses" is not defined in the PIP Statute, the statute uses the terms to describe actual losses realized by the insured. Subsection 627.736(1) requires insurers to cover insureds for "loss sustained by [the insured] as a result of bodily injury." Sub-parts (a) and (b) to subsection (1) discuss medical expenses; loss of income and earning capacity; and "expenses reasonably incurred" in obtaining

household services for chores the insured would ordinarily have performed. § 627.736(1)(a)-(b).

The PIP Statute includes three types of "benefits" – Medical Benefits; Disability Benefits; and Death Benefits. Medical Benefits payable by the insurer are a percentage of reasonable medical expenses. § 627.736(1)(a) (requiring medical benefits to be paid at 80% of expenses). Disability Benefits payable by the insurer are a percentage of loss of income and earning capacity and expenses incurred to reimburse the insured for necessary services. § 627.736(1)(b) (requiring disability benefits to be paid at 60% of loss and expenses). "[T]he 80% and 60% methodologies in section 627.736(1) are intended to limit reimbursements in order to establish benefits. They are not intended to describe the application of the deductible under the 100% methodology provided in section 627.739(2)." *Florida Hospital a/a/o Parent*, 2018 WL 792012 at \*3.

The insurer argues that the fee schedules found in section 627.736(5)(a)2. should be applied to lower the medical providers' bills during the Deductible Phase, and that those lower bills should be applied to satisfy the deductible. This interpretation of the statutes will result in the insurer paying less because the providers' charges will be reduced and more of the providers' bills would be applied to satisfy the insured's deductible (which the insurer does not pay).

The insurer's interpretation of the statutes is not supported by the plain language of § 627.736(5)(a)1. and 2. which permit a provider to charge the insurer and the insured a reasonable amount for services while allowing the insurer to "limit reimbursement" to the provider based on a fee schedule. During the Deductible Phase, however, the insurer is not reimbursing the medical provider; it is the insured who is paying the provider. Section 627.736(5)(a)2. and its schedule of "maximum charges" is triggered only after the deductible has been satisfied and the insurer is reimbursing the provider – i.e., during the Benefits Phase.

As the Fifth District observed:

> We do not believe that the Legislature intended the statutory reimbursement limitations to be applied to expenses and losses that fall within the insured's deductible, which the insured alone is obligated to pay and which are not recoverable as benefits under the policy.

*Florida Hospital, a/a/o Parent*, 2018 WL 792012 at \*8.

I also agree with the Fifth District that the plain language of the Deductible Statute negates the insurer's argument. Section 627.739(2) mandates that the deductible "must be applied to 100 percent" of the insured's expenses and losses. 100 percent means, well, 100 percent. All. Everything. Total. It does not mean 80% of "200 percent of the applicable Medicare Part B fee schedule," which is a reimbursement limitation. As the Fifth District wrote:

> We believe that application of the optional reimbursement limitations to establish a reduced amount of expenses and losses from which the deductible amount is subtracted would render meaningless the requirement in section 627.739(2) that "[t]he deductible amount must be applied to 100 percent of the expenses and losses."

*Florida Hospital a/a/o Parent*, 2018 WL 792012 at *4.

For these reasons, I would rephrase the question certified by the county court as follows:

> PURSUANT TO FLA. STAT. § 627.739, IS AN INSURER REQUIRED TO APPLY THE DEDUCTIBLE TO 100% OF AN INSURED'S EXPENSES AND LOSSES PRIOR TO APPLYING ANY PERMISSIVE FEE SCHEDULE PAYMENT LIMITATION FOUND IN FLORIDA STATUTE SECTION 627.736(5)(a)1. (2013)?

I would then answer the question in the affirmative.

\*　　\*　　\*

***Not final until disposition of timely filed motion for rehearing.***