# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**BARTOW HMA, INC.** d/b/a **BARTOW REGIONAL MEDICAL CENTER**
a/a/o **MARIA APARICIO**,
Appellant,

v.

**SECURITY NATIONAL INSURANCE COMPANY,**
Appellee.

No. 4D21-167

[July 14, 2021]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Reginald Roy Corlew, Judge; L.T. Case Nos. 50-2012-SC-023186-XXXX-SB and 50-2019-AP-000117-CAXX-MB.

Chad A. Barr of Law Office of Chad A. Barr, P.A., Altamonte Springs, for appellant.

Anthony J. Parrino and Jennifer W. Opiola of Reynolds Parrino & Shadwick, P.A., St. Petersburg, and Sunia Yvette Marsh of Law Offices of Christina M. Sanabria, Tampa, for appellee.

MAY, J.

A medical provider appeals a final summary judgment in favor of an insurer. The provider argues the insurer's policy fails to "clearly and unambiguously" choose the permissive reimbursement method required because it impermissibly allows the insurer to consider factors of both the default method described in section 627.736(5)(a)1., Florida Statutes (2011), and the permissive reimbursement method described in section 627.736(5)(a)2. We disagree and affirm.

In 2011, the insurer issued a policy providing PIP coverage to the insured. The policy provided it would pay 80% of all reasonable expenses "as defined in this policy [of insurance]." The policy defined "reasonable expenses" as:

> **6. Reasonable expenses** shall mean the lesser of the amount
> provided by any fee schedule or schedule of payment, whether

mandatory or permissive, as contained in the Florida Motor Vehicle No-Fault Law (§§627.730–627.7405, Florida Statutes) as may be amended from time to time, which was in effect on the date that this policy was issued. We shall not pay any amount in excess of the amount the person or institution customarily charges for like services or supplies.

The policy also provided:

> **Limits of Liability**
> . . .
> 4. We shall limit reimbursement to 80 percent of the following schedule of maximum charges fee schedule or schedule of payment, whether mandatory or permissive, as contained in the Florida Motor Vehicle No-Fault Law (§§627.730–627.7405, Florida Statutes) as may be amended from time to time, which was in effect on the date that this policy was issued. We shall not pay any amount in excess of the amount the person or institution customarily charges for like services or supplies
> . . . .

Lastly, the policy provided that, "[i]f an injured person incurs medical expenses that we deem to be unreasonable or unnecessary, we may refuse to pay for those medical expenses and contest them."

In 2011, the insured suffered injuries from an automobile accident and sought treatment. The medical provider submitted an invoice for medical expenses to the insurer.

Under section 627.736(5)(a)2., Florida Statutes, the insurer reduced the provider's medical expenses to 200% of Medicare and paid 80% of the reduced expenses. The provider then sued the insurer for the difference between the amount billed and the amount paid. Pursuant to the parties' stipulation, the only disputed issue was whether the policy satisfied the notice requirement set forth in *Geico General Insurance Co. v. Virtual Imaging Services, Inc.*, 141 So. 3d 147 (Fla. 2013) (hereinafter "*Virtual III*").

The insurer moved for summary judgment. It argued it properly elected to limit reimbursement to 80 percent of the applicable Medicare Part B fee schedule in accordance with the applicable limitations provided in section 627.736(5)(a)2.b., Florida Statutes. The provider responded and cross-moved for summary judgment. It argued the policy failed to "clearly and unambiguously" choose the permissive reimbursement method required by *Virtual III* because it impermissibly allowed the insurer to consider

2

factors of both the default and permissive reimbursement methods described in sections 627.736(5)(a)1. and 2., Florida Statutes, respectively.

Following a hearing on the motion and cross-motion, the trial court entered a final judgment in the insurer's favor. The trial court concluded the policy satisfied the requirements of *Virtual III* because it provided sufficient notice of intent to limit reimbursements to the schedule of maximum charges or fee schedules, and made a clear and unambiguous election of the payment methodology it utilized for PIP reimbursements.

The provider moved for rehearing, which the trial court denied. The provider appealed to the circuit court, which transferred the case here.

The provider argues the policy fails to provide sufficient notice that the insurer elected to limit reimbursements pursuant to section 627.736(5)(a)2. It contends the policy ambiguously refers to the alternative method of reimbursement calculations found in section 627.736(5)(a)1. and therefore violates the notice requirement required by *Virtual III*.

The insurer responds *Virtual III* does not require that a policy provide notice that it elects the payment methodology of section 627.736(5)(a)2. to the exclusion of the alternative method of section(5)(a)1. As long as the policy clearly and unambiguously elects to limit reimbursements pursuant to section 627.736(5)(a)2., it satisfies *Virtual III*. We agree and affirm.

### *The Analysis*

We have de novo review of the legal issue. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

Florida's No-Fault Law's "stated purpose is 'to provide for medical, surgical, funeral, and disability insurance benefits without regard to fault, and to require motor vehicle insurance securing such benefits.'" *Virtual III*, 141 So. 3d at 152 (quoting § 627.731, Fla. Stat. (2008)). "The PIP statute, codified in section 627.736, is 'an integral part of the no-fault statutory scheme.'" *Id.* (quoting *Flores v. Allstate Ins. Co.*, 819 So. 2d 740, 744 (Fla. 2002)). "This statutory provision 'requires motor vehicle insurance policies issued in Florida to provide PIP benefits for bodily injury arising out of the ownership, maintenance, or use of a motor vehicle.'" *Id.* at 153 (quoting *Allstate Ins. Co. v. Holy Cross Hosp., Inc.*, 961 So. 2d 328, 332 (Fla. 2007)).

- ### *The Reasonable Expenses Section*

3

Subsection (1)(a) of the PIP statute requires insurance policies to provide coverage for 80% of all *reasonable* medical expenses arising from motor vehicle related injuries. § 627.736(1)(a), Fla. Stat. (2011). Subsections (5)(a)1. and 2. provide two methodologies for payment reimbursements: one incorporates a list of factors to determine whether a medical expense is reasonable, and the other permits a limit on reimbursements up to 80 percent of the schedule of maximum charges, respectively. §§ 627.736(5)(a)1., 2., Fla. Stat. (2011).

Insurance policies are required to clearly and unambiguously elect to reimburse providers under subsection (5)(a)2. *Virtual III*, 141 So. 3d at 158. In *Virtual III*, the supreme court analyzed the PIP statute's dual provisions for reimbursement payment methodologies and concluded subsection (5)(a)2. was "permissive"—that is, that it provided an *optional* way for insurers to calculate reimbursements to satisfy the PIP statute's reasonable medical expenses coverage mandate. *Id.* at 157.

In contrast, the supreme court determined subsection (5)(a)1. was a "default" methodology to be applied *if the permissive option was not elected.* *See id.* at 158. Because one methodology applied automatically but the other was optional, the supreme court fashioned a requirement for insurers to notify their insureds and physicians that an insurer intended to limit reimbursements pursuant to the Medicare fee schedule. *Id.* at 159.[1]

The provider argues that *Virtual III*'s notice requirement prevents an insurer from referencing both the default and permissive payment methodologies provided in subsections (5)(a)1. and (a)2., respectively. We disagree.

First, *Virtual III* does not dictate that a policy must specify which of the two methodologies it intends to rely on in calculating reimbursements. Rather, it requires an insurance policy provide notice that the insurer *may* elect to limit reimbursements pursuant to the fee schedules provided in

---

[1] It should be noted that *Virtual III* analyzed an older version of the PIP statute and therefore its holding "applies only to policies that were in effect from the effective date of the 2008 amendments to the PIP statute that first provided for the Medicare fee schedule methodology, which was January 1, 2008, through the effective date of the 2012 amendment, which was July 1, 2012." 141 So. 3d at 150. Because the policy at issue here was executed in 2011, *Virtual III* and its progeny control.

subsection (5)(a)2. to avoid blindsiding insureds and providers with an otherwise unknown option to limit reimbursements. The supreme court stated:

> Because the fee schedule provision of section 627.736(5)(a)2.f. is permissive and not mandatory, and because the Medicare fee schedules are not the only mechanism for calculating reimbursements, we conclude that . . . the insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy. In other words, the Medicare fee schedules set forth in section 627.736(5)(a)2. provide an option for insurers, not the method of how the insurer exercises this option. In order to exercise the option, the insurer must provide notice in the policy of its election to use the fee schedules.
>
> Subsection 5 of section 627.736(5)(a), Florida Statutes (2008), further supports this conclusion . . . . The Legislature's use of the conditional word "[i]f" in this statutory provision to describe an insurer's ability to limit reimbursements in accordance with the Medicare fee schedules indicates that an insurer is not *required* to use those schedules. As the Fourth District explained in *Kingsway* [*Amigo Insurance Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67 (Fla. 4th DCA 2011)], the language in section 627.736(5)(a)5. "anticipates that an insurer will make a choice." Accordingly, even if the Medicare fee schedules are incorporated into the insured's policy, neither the insured nor the provider knows, without the policy providing notice by electing the Medicare fee schedules, that the insurer will limit reimbursements.

*Id.* at 158–59 (third alteration in original).

This conclusion is consistent with the current version of the PIP statute:

> 5. An insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer *may* limit payment pursuant to the schedule of charges specified in this paragraph.

§ 627.736(5)(a)5., Fla. Stat. (2020) (emphasis added).

The provider's argument that the policy is required to exclude any reference to the default methodology to give proper notice of the insurer's election to limit reimbursements pursuant to subsection (5)(a)2. is simply unsupported by *Virtual III* and was rejected in *Allstate Insurance Co. v. Orthopedic Specialists*, 212 So. 3d 973 (Fla. 2017).

The supreme court reasoned in *Orthopedic Specialists* that, although Allstate's policy did not provide for only one payment methodology and referenced "all fee schedules," when read in context, the policy "clearly and unambiguously" provided that "reimbursements will be made in accordance with all of the fee schedule limitations contained within section 627.736(5)(a)2." *Id.* at 977. The court explained:

> A PIP policy *cannot* contain a statement that the insurer will not pay eighty percent of reasonable charges because no insurer can disclaim the PIP statute's reasonable medical expenses coverage mandate. Furthermore, a PIP policy cannot state that the insurer will calculate benefits solely under the [permissive methodology] because the Medicare fee schedules are not the only applicable mechanism for calculating reimbursements under the permissive payment methodology.

*Id.* (emphasis added) (internal citation omitted).

Here too, when read in context, the policy's provisions unambiguously elect to limit reimbursements pursuant to subsection (5)(a)2. The policy provides the insurer would pay 80% of all reasonable expenses "as defined in this policy [of insurance]." The policy defines "reasonable expenses" as:

> the lesser of the amount provided by any fee schedule or schedule of payment, whether mandatory or permissive, as contained in the Florida Motor Vehicle No-Fault Law (§§627.730–627.7405, Florida Statutes) as may be amended from time to time, which was in effect on the date that this policy was issued. We shall not pay any amount in excess of the amount the person or institution customarily charges for like services or supplies.

When read in context, the policy provides the requisite notice that the insurer will reimburse providers pursuant to the fee schedules in subsection (5)(a)2.

The provider next argues the policy is ambiguous because it suggests

the insurer may elect either the default or permissive payment methodologies in calculating reimbursements. Once again, we disagree.

Here, the policy's limits of liability provision clearly elected to limit reimbursements under subsection (5)(a)2. Because the contract must be read as a whole, the reasonable expenses provision's references to the term "mandatory" and factors mirroring subsection (5)(a)1. do not negate the insurer's notice of its intent to limit liability pursuant to subsection (5)(a)2., as provided in the policy's limitations provision. They are therefore irrelevant to the analysis. *See Virtual III*, 141 So. 3d at 156 (explaining default methodology of subsection (5)(a)1. exists for insurer to have "'recourse to some alternative means for determining a reimbursement amount' *if it chooses not to use the Medicare fee schedules*." (emphasis added) (citations omitted)).

The policy's reasonable expenses provision merely provides that it would pay the lesser of the fee schedule limitation amount found in subsection (5)(a)2. There simply is no ambiguity. *See Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003).

- ***Limits of Liability Section***

The policy also provides:

> **Limits of Liability**
> . . .
> 4. We shall limit reimbursement to 80 percent of the following schedule of maximum charges fee schedule or schedule of payment, whether mandatory or permissive, as contained in the Florida Motor Vehicle No-Fault Law (§§627.730–627.7405, Florida Statutes) as may be amended from time to time, which was in effect on the date that this policy was issued. We shall not pay any amount in excess of the amount the person or institution customarily charges for like services or supplies . . . .

This section provides the insurer shall "limit" reimbursement to 80 percent of the "following schedule of maximum charges fee schedule or schedule of payment, whether mandatory or permissive . . . ." Because the provision references the "schedule of maximum charges fee schedule or schedule of payment," it limits reimbursement under subsection (5)(a)2., thereby electing the permissive payment methodology. *See Orthopedic Specialists*, 212 So. 3d at 977–79.

This section is almost indistinguishable from the same section in *Orthopedic Specialists*. Although *Orthopedic Specialists* did not expressly mention the term "mandatory" as the policy does here, it expressly referenced "any and all limitations" and "all fee schedules" of section 627.736, which includes both the default and permissive payment methodologies of subsections (5)(a)1. and (a)2. *See id.*

This conclusion is further supported by the limitations section tracking the fee schedule provided in subsection (5)(a)2. It is also consistent with the legislative amendments to section 627.736(5), which no longer contain two mutually exclusive methodologies for calculating reimbursement payments. *See State Farm Mut. Auto. Ins. Co. v. MRI Assocs. of Tampa, Inc.*, 252 So. 3d 773, 778 (Fla. 2d DCA 2018) (rejecting argument that State Farm's policy contains an "unlawful hybrid method" of reimbursement calculation by referencing both default and permissive payment methodologies because statute now "includes the fact-dependent calculation of reasonable charges as part of the definition of '[c]harges for treatment of injured persons' under section (5)(a).'").

In short, the limits of liability section clearly and unambiguously elects the permissive fee reimbursement methodology of subsection (5)(a)2.

- *Unreasonable Expenses Section*

Lastly, the provider argues the policy's unreasonable or unnecessary medical expenses provision creates ambiguity between whether the insurer will limit reimbursements pursuant to the fee schedule of subsection (5)(a)2. or its own determination of "unreasonable or unnecessary" charges. Like the reasonable expenses provision, this section does not negate the insurer's notice to limit reimbursements pursuant to the fee schedules.

In fact, the section is identical to that in *Orthopedic Specialists*, which was found to provide legally sufficient notice. Although the supreme court did not directly address this section in *Orthopedic Specialists*, its de novo review suggests that nothing in the policy rendered the election ambiguous. *See Orthopedic Specialists*, 212 So. 3d at 975; *see also Hanna v. WCI Cmtys., Inc.*, 348 F. Supp. 2d 1322, 1329 (S.D. Fla. 2004) ("Courts have traditionally defined 'de novo review' to mean 'that the whole process before the district court would start from scratch, as if the proceedings [below] had never occurred.'" (alteration in original) (quoting *United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990))).

The section is also consistent with the rest of the policy because it provides the insurer will not pay expenses it deems unreasonable. It then defines reasonable charges to include the lesser of the amounts provided in the fee schedule of subsection (5)(a)2. In short, the provision does not create an ambiguity regarding the insurer's intent to limit reimbursements. *Swire Pac. Holdings, Inc.*, 845 So. 2d at 165.

### *Conclusion*

Because the policy clearly and unambiguously provides notice that the insurer intends to limit reimbursements pursuant to the permissive payment methodology of subsection (5)(a)2., the trial court did not err in finding the policy comported with the notice requirements of *Virtual III*.

We therefore affirm.

*Affirmed.*

LEVINE and FORST, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

9