# Supreme Court of Florida

_____

No. SC15-2298
_____

**ALLSTATE INSURANCE COMPANY,**
Petitioner,

vs.

**ORTHOPEDIC SPECIALISTS, etc.,**
Respondents.

[January 26, 2017]

CANADY, J.

In this case we consider whether a personal injury protection ("PIP") insurance policy provides legally sufficient notice of the insurer's election to use the permissive Medicare fee schedules identified in section 627.736(5)(a)2., Florida Statutes (2009), to limit reimbursements for medical expenses. The case is before the Court for review of the decision of the Fourth District Court of Appeal in Orthopedic Specialists v. Allstate Insurance Co., 177 So. 3d 19 (Fla. 4th DCA 2015), which held that the policy language is not legally sufficient to authorize Allstate to apply the Medicare fee schedules. The Fourth District certified that its decision is in direct conflict with the decision of the First District Court of Appeal

in <u>Allstate Fire & Casualty Insurance v. Stand-Up MRI of Tallahassee, P.A.</u>, 188 So. 3d 1, 3 (Fla. 1st DCA 2015), which held that identical policy language "g[ave] sufficient notice of [the insurer's] election to limit reimbursements by use of the fee schedules." We have jurisdiction. <u>See</u> art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we hold that Allstate's insurance policy provides legally sufficient notice of Allstate's election to use the permissive Medicare fee schedules identified in section 627.736(5)(a)2. to limit reimbursements. We therefore quash the decision of the Fourth District in <u>Orthopedic Specialists</u> and approve the decision of the First District in <u>Stand-Up MRI</u> on the conflict issue.

## I. BACKGROUND

In the case on review, Orthopedic Specialists and various medical services providers ("the Providers") challenged the reimbursements made by Allstate Insurance Company ("Allstate") under PIP no-fault insurance policies issued to Allstate's insureds. <u>Orthopedic Specialists</u>, 177 So. 3d at 20. The Providers argued that Allstate's policy is ambiguous as to whether Allstate has elected to reimburse the Providers in accordance with the Medicare fee schedules provided for in section 627.736(5)(a)2. or merely reserved its right to elect to do so. <u>Id.</u> at 20-21. Specifically, the Providers argued that the "shall be subject to" provision, contained within an endorsement to the Allstate policy, is ambiguous. <u>Id.</u> at 21.

The policy at issue provides that Allstate will make payments as

follows:

> Allstate will pay to or on behalf of the injured person the following benefits:
>
> 1. Medical Expenses
>    Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services.

Id.  An endorsement to the policy provides:

> Limits of Liability
> . . . .
>
> Any amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules.

Id. (emphasis and alterations omitted).

On appeal, the Fourth District examined this Court's decision in Geico General Insurance Co. v. Virtual Imaging Services, Inc., 141 So. 3d 147 (Fla. 2013), and concluded that "Virtual Imaging's central holding is clear: To elect a payment limitation option, the PIP policy must do so 'clearly and unambiguously.' " Orthopedic Specialists, 177 So. 3d at 25.  The Fourth District explained that in order to provide legally sufficient notice in accordance with Virtual Imaging, a policy must "plainly and obviously limit[] reimbursement to the Medicare fee schedules exclusively." Id. at 25-26.  The Fourth District further concluded that "[t]he policy must make it inescapably discernable that it will not

- 3 -

pay the 'basic' statutorily required coverage [mandate of eighty percent of reasonable expenses for medically necessary services] and will instead substitute the Medicare fee schedules as the exclusive form of reimbursement." Id. at 26.

After examining the endorsement to the Allstate policy, the Fourth District held that the policy language is not legally sufficient to authorize Allstate to apply the Medicare fee schedules because the "shall be subject to" language at issue is "ambiguous," "inherently unclear," and "must therefore be construed in favor of the Providers." Id. at 21, 26. The Fourth District reasoned that it is ambiguous concerning whether Allstate will apply the Medicare fee schedule limitations to limit reimbursements:

> Here, providing that any amounts payable would be "subject to" "any and all limitations" authorized by the statute or any amendments thereto, Allstate did nothing more than state the obvious by indicating that there was a possibility (and the statutory authorization) for Allstate to apply a specific reimbursement limitation. The only reasonable way to read the language is as a general recital of Allstate's reservation of its right to apply limitations authorized by law, with the accompanying and corresponding obligation to notify its policy holders of the election.

Id. at 24. The Fourth District rejected Allstate's argument that the use of the term "shall" removes any possible ambiguity regarding whether the Medicare fee schedule limitations were to be applied:

> The word "shall" is meaningless because it simply emphasizes the obvious. Broken down to its most simple form, Allstate's policy says that "any amounts payable under this coverage shall be subject to any and all limitations" in the PIP statute. The policy text does not say

- 4 -

that the limitations "shall be applied"; only that they shall be <u>subject</u> <u>to</u> being applied. The word "shall" does not make it clear whether Allstate will utilize the alternative method or is simply recognizing its entitlement to do so.

<u>Id.</u> at 25.

## II. ANALYSIS

"Because the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law—specifically, the PIP statute—as well as to interpret the insurance policy, our standard of review is de novo." <u>Virtual Imaging</u>, 141 So. 3d at 152.

"Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written." <u>Washington Nat. Ins. Corp. v. Ruderman</u>, 117 So. 3d 943, 948 (Fla. 2013). "Further, in order for an exclusion or limitation in a policy to be enforceable, the insurer must clearly and unambiguously draft a policy provision to achieve that result." <u>Virtual Imaging</u>, 141 So. 3d at 157. "Policy language is considered to be ambiguous . . . if the language 'is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.' " <u>Travelers Indem. Co. v. PCR Inc.</u>, 889 So. 2d 779, 785 (Fla. 2004) (quoting <u>Swire Pac. Holdings v. Zurich Ins. Co.</u>, 845 So. 2d 161, 165 (Fla. 2003)). "[A]mbiguous insurance policy exclusions are construed against the drafter and in favor of the insured." <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So.

- 5 -

2d 29, 34 (Fla. 2000). "To find in favor of the insured on this basis, however, the policy must actually be ambiguous." Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010) (emphasis omitted).

"When interpreting insurance contracts, we may consult references commonly relied upon to supply the accepted meanings of words." Garcia v. Fed. Ins. Co., 969 So. 2d 288, 291-92 (Fla. 2007). Moreover, "when analyzing an insurance contract, it is necessary to examine the contract in its context and as a whole, and to avoid simply concentrating on certain limited provisions to the exclusion of the totality of others." Swire, 845 So. 2d at 165. This Court has "consistently held that 'in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.' " Id. at 166 (quoting Auto-Owners, 756 So. 2d at 34).

### The PIP Statute

"[T]he PIP statute sets forth a basic coverage mandate: every PIP insurer is required to—that is, the insurer 'shall'—reimburse eighty percent of reasonable expenses for medically necessary services." Virtual Imaging, 141 So. 3d at 155. This provision—the reasonable medical expenses coverage mandate—is "the heart of the PIP statute's coverage requirements." Id. "[T]here are two different methodologies for calculating reimbursements to satisfy the PIP statute's reasonable medical expenses coverage mandate." Id. at 156 (emphasis omitted).

Compare § 627.736(5)(a)1., Fla. Stat. (2009), with § 627.736(5)(a)2., Fla. Stat. (2009).  Under the first payment methodology contained within section 627.736(5)(a)1., "reasonableness is a fact-dependent inquiry determined by consideration of various factors."  Virtual Imaging, 141 So. 3d at 155-56.  Under the alternative, permissive payment methodology contained within section 627.736(5)(a)2., "insurers 'may limit reimbursement' to eighty percent of a schedule of maximum charges set forth in the PIP statute."  Id. at 154 (quoting § 627.736(5)(a)2., Fla. Stat.).  Reimbursements made under section 627.736(5)(a)2. satisfy the PIP statute's reasonable medical expenses coverage mandate.  See id. at 150, 156-57.

In Virtual Imaging, this Court "h[eld] that under the 2008 amendments to the PIP statute, a PIP insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy."  Id. at 160.  This Court concluded that

> notice to the insured, through an election in the policy, is necessary because the PIP statute, section 627.736, requires the insurer to pay for "reasonable expenses . . . for medically necessary . . . services," § 627.736(1)(a), Fla. Stat., but merely permits the insurer to use the Medicare fee schedules as a basis for limiting reimbursements, see § 627.736(5)(a)2., Fla. Stat.

Id. at 150 (alterations in original).  Accordingly, this Court reasoned that

> [b]ecause the fee schedule provision of section 627.736(5)(a)2.f. is permissive and not mandatory, and because the Medicare fee schedules are not the only mechanism for calculating reimbursements,

. . . the insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy.

Id. at 158-59. As this Court explained, "when the plain language of the PIP statute affords insurers two different mechanisms for calculating reimbursements, the insurer must clearly and unambiguously elect the permissive payment methodology in order to rely on it." Id. at 158 (citing Kingsway Amigo Ins. Co. v. Ocean Health, Inc., 63 So. 3d 63, 67-68 (Fla. 4th DCA 2011)).

### The Instant Case

Allstate's PIP policy provides legally sufficient notice of Allstate's election to use the permissive Medicare fee schedules identified in section 627.736(5)(a)2. to limit reimbursements. The endorsement to Allstate's policy clearly and unambiguously states that "[a]ny amounts payable" for medical expense reimbursements "shall be subject to any and all limitations, authorized by section 627.736, . . . including . . . all fee schedules." When read in its context and as a whole with Allstate's policy, the plain and obvious meaning of the endorsement is that reimbursements will be made in accordance with all of the fee schedule limitations contained within section 627.736(5)(a)2. See, e.g., Stand-Up MRI, 188 So. 3d at 3 ("Virtual Imaging requires no other magic words from Allstate's policy and its simple notice requirement is satisfied by Allstate's [unambiguous] language limiting '[a]ny amounts payable' to the fee schedule-based limitations found in the

- 8 -

statute." (second alteration in original)); <u>Fla. Wellness & Rehab. v. Allstate Fire & Cas. Ins. Co.</u>, 201 So. 3d 169, 173 (Fla. 3d DCA 2016) ("The use of the phrase 'subject to' in the policy places the insured on notice of the limitations elected by Allstate; indeed, we cannot discern any other alternative meaning to this language."); <u>Allstate Indem. Co. v. Markley Chiropractic & Acupuncture, LLC</u>, 41 Fla. L. Weekly D793, 2016 WL 1238533, at *4 (Fla. 2d DCA Mar. 30, 2016) (explaining that "<u>Virtual Imaging</u> did not dictate a form of notice" or require insurers to specifically state the word "Medicare"). Allstate's policy thus places both providers and insured on notice of Allstate's election to use the permissive Medicare fee schedules identified in section 627.736(5)(a)2. to limit reimbursements.

Respondents argue that Allstate's policy is ambiguous under <u>Virtual Imaging</u> because it fails to state that Allstate: (1) will not actually pay eighty percent of reasonable charges and (2) will instead calculate benefits only under the permissive Medicare fee schedules contained within section 627.736(5)(a)2. But Respondents' argument misconstrues <u>Virtual Imaging</u>. A PIP policy cannot contain a statement that the insurer will not pay eighty percent of reasonable charges because no insurer can disclaim the PIP statute's reasonable medical expenses coverage mandate. <u>See</u> <u>Virtual Imaging</u>, 141 So. 3d at 155. Furthermore, a PIP policy cannot state that the insurer will calculate benefits solely

under the Medicare fee schedules contained within section 627.736(5)(a)2. because the Medicare fee schedules are not the only applicable mechanism for calculating reimbursements under the permissive payment methodology. See id. at 159 (explaining that "the Medicare fee schedules are not the only mechanism for calculating reimbursements"). Compare § 627.736(5)(a)2.a., d.-f., Fla. Stat. (referring to the Medicare fee schedules), with § 627.736(5)(a)2.b.-c., Fla. Stat. (referring to the non-Medicare fee schedules).

Respondents argue that Allstate's policy is ambiguous because the term "shall" can reasonably be construed as "must" or "may." This argument unreasonably suggests that we ignore the context in which "shall" appears. Respondents correctly note that the term "shall" can be construed as "must" or "may." See, e.g., Black's Law Dictionary (10th ed. 2014) (defining "shall" in relevant part as "will" or "may"). But it is frequently unambiguously the case that "[t]he word 'shall' is mandatory in nature." Sanders v. City of Orlando, 997 So. 2d 1089, 1095 (Fla. 2008); see Virtual Imaging, 141 So. 3d at 155 (interpreting the word "shall" contained within section 627.736(1) as mandatory). This Court has recognized that "[a]lthough there is no fixed construction of the word 'shall,' it is normally meant to be mandatory in nature" and "[i]ts interpretation depends upon the context in which it is found." S. R. v. State, 346 So. 2d 1018, 1019 (Fla. 1977) (citation omitted). Nothing within Allstate's policy indicates that this Court should

construe the word "shall" contrary to its normal usage. Given the context of the policy provision, the only reasonable interpretation of the term "shall" is as "must" or "will."

Respondents argue that even if the term "shall" is interpreted as mandatory, Allstate's policy is ambiguous because the phrase "subject to" can reasonably be construed as a mandatory command or a permissive instruction. Again, this argument suggests that we should ignore the context. Respondents correctly note that the phrase "subject to" can be construed as a permissive instruction. See, e.g., Oxford American Dictionary & Thesaurus 1301-02 (2nd ed. 2009) (defining "subject to" in relevant part as "dependent or conditional on" or "under someone's or something's control or authority"); St. Augustine Pools, Inc. v. James M. Barker, Inc., 687 So. 2d 957, 958 (Fla. 5th DCA 1997) ("The term 'subject to' means 'liable, subordinate, subservient, inferior, obedient to; governed or affected by; provided that; provided; answerable.' " (quoting Black's Law Dictionary 1425 (6th ed. 1990))). Because insurance contracts must be read as a whole and not in isolated parts, the appropriate inquiry in this case is whether the phrase "shall be subject to" is ambiguous within the full context of Allstate's PIP policy.

Although there is no fixed construction of the phrase "shall be subject to," it is normally meant to be mandatory in nature and its interpretation depends upon the context in which it is found. See, e.g., Certain Interested Underwriters at

Lloyd's London v. Pitu, Inc., 95 So. 3d 290, 293 (Fla. 3d DCA 2012) (holding that an endorsement to a homeowner's insurance policy stating "loss(es) paid arising out of, or caused by, water damage <u>shall be subject to</u> a maximum amount of $25,000 during the policy term" clearly and unambiguously limited reimbursement of losses for water damage to $25,000 (alteration in original) (emphasis added)); cf. <u>S. R. v. State</u>, 346 So. 2d at 1019 (reasoning that the word "shall" is normally meant to be mandatory in nature and its interpretation depends upon the context in which it is found). This Court has interpreted the phrase "shall be subject to" as a mandatory command and a permissive instruction in different contexts. <u>Compare</u> <u>Robertson v. State</u>, 143 So. 3d 907, 908-09 (Fla. 2014) (explaining that because the Legislature has mandated in section 921.141(4), Florida Statutes (2013), that "[t]he judgment of conviction and sentence of death <u>shall be subject to</u> automatic review by the Supreme Court of Florida," Florida law "<u>requires</u> that this Court <u>shall</u> automatically review every judgment of conviction and sentence of death" (alteration in original) (emphasis added)), <u>and</u> <u>St. Mary's Hosp., Inc. v. Phillipe</u>, 769 So. 2d 961, 972 (Fla. 2000) ("Arbitration is not voluntary according to section 766.207(7)(k) because 'a claimant who rejects a defendant's offer to arbitrate <u>shall</u> <u>be subject to</u> the provisions of section 766.209(4),' which limits the noneconomic damages to be awardable at trial to $350,000." (emphasis added)), <u>with</u> <u>Fallis v.</u> <u>City of N. Miami</u>, 127 So. 2d 883, 884 (Fla. 1961) (holding that the phrase "shall

- 12 -

be subject to referendum" contained within the charter of the City of North Miami was "not mandatory" because it was "obviously intended to <u>permit</u> a referendum on a bond ordinance when such is demanded in accordance with other provisions of the municipal charter").

Here, in the context of Allstate's PIP policy, the only reasonable interpretation of the phrase "shall be subject to" is as a mandatory command. By stating that "[a]ny amounts payable" for medical expense reimbursements "shall be subject to any and all limitations, authorized by section 627.736, . . . including . . . all fee schedules," Allstate's policy endorsement states in mandatory language that benefit payments <u>must</u> or <u>will</u> be made in accordance with such limitations. The use of the word "shall"—which is mandatory in nature—supports this conclusion, and nothing within Allstate's policy indicates that this Court should construe the phrase "shall be subject to" as a permissive instruction. To interpret the provision as argued by the Respondents would effectively make the provision meaningless. Under that interpretation, the provision amounts to nothing more than a nugatory recitation of the statutory authorization.

Respondents argue that Allstate's policy is ambiguous because the phrase "all fee schedules" includes both the non-Medicare fee schedules listed in section 627.736(5)(a)1. and the Medicare fee schedules listed in section 627.736(5)(a)2. Not so. In the context of Allstate's policy, the endorsement unambiguously

references "any and all <u>limitations</u>, authorized by section 627.736, . . . including . . . <u>all fee schedules</u>." (Emphasis added.) A review of section 627.736 reveals that the only <u>fee schedule limitations</u> applicable to insurer payments contained within that statute are located in section 627.736(5)(a)2. <u>See</u> § 627.736(5)(a)2., Fla. Stat. ("The insurer may <u>limit</u> reimbursement to 80 percent of the following <u>schedule</u> of maximum charges . . . ." (emphasis added)); § 627.736(5)(a)3.-5., Fla. Stat. (referencing the fee schedule limitations contained within section 627.736(5)(a)2.). The "fee schedules" referred to in subsection (a)1. are not within the category of "limitations" referred to in the policy endorsement. In explaining the factors that are relevant to determining what constitutes a reasonable charge, subsection (a)1. simply provides that "consideration may be given" to various relevant factors, including "various federal and state medical fee schedules applicable to automobile and other insurance coverages." These fee schedules may be considered in determining the amount of reasonable charges, but they—unlike the fee schedules referred to in subsection (a)2.—do not operate as "limitations" on charges.

<u>Orthopedic Specialists</u> erroneously concluded that Allstate's policy language is not legally sufficient to authorize Allstate to apply the Medicare fee schedules. <u>Stand-Up MRI</u> correctly concluded that Allstate's PIP policy provides legally sufficient notice of Allstate's election to use the permissive Medicare fee schedules identified in section 627.736(5)(a)2. to limit reimbursements.

## III. CONCLUSION

We approve <u>Stand-Up MRI</u> on the conflict issue and quash <u>Orthopedic Specialists</u>.

It is so ordered.

LABARGA, C.J., and QUINCE, and POLSTON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which LEWIS, J., and PERRY, Senior Justice, concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., dissenting.

I dissent and would adopt the Fourth District's well-reasoned decision in <u>Orthopedic Specialists v. Allstate Insurance Co.</u>, holding that the policy language in the Allstate personal injury protection (PIP) policy is "inherently unclear" and did <u>not</u> properly provide legally sufficient notice to the insured or medical providers of the insurer's election to use the permissive Medicare fee schedule. 177 So. 3d 19, 20-21 (Fla. 4th DCA 2015). If an insurer elects to use the Medicare fee schedule as the standard for reimbursement, "the insurer must clearly and unambiguously draft a policy provision to achieve that result." <u>Geico Gen. Ins. Co. v. Virtual Imaging Servs., Inc.</u>, 141 So. 3d 147, 157 (Fla. 2013). Likewise, I agree with the Fourth District's analysis that "[a] policy is not sufficient unless it plainly and obviously limits reimbursement to the Medicare fee schedules exclusively." <u>Orthopedic Specialists</u>, 177 So. 3d at 25-26.

- 15 -

As the majority stated, the policy language at issue in this case states:

> Allstate will pay to or on behalf of the injured person the following benefits:
>
> 1. Medical Expenses
> Eighty percent of all reasonable expenses for medically necessary medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and medically necessary ambulance, hospital, and nursing services.
> . . . .
> Limits of Liability
> . . . .
>
> Any amounts payable under this coverage shall be subject to any and all limitations, authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules.

Majority op. at 3.

I agree with the Fourth District's explanation that the policy language including "all fee schedules" authorized by Florida's PIP statute does not clearly and unambiguously put providers on notice that Allstate elects the Medicare fee schedule. As the Fourth District also explained regarding the "subject to" language:

> The policy cannot leave Allstate's choice of reimbursement method in limbo under the guise of the words, "subject to" without incorporating specific words to that effect. The policy must make it inescapably discernable that it will not pay the "basic" statutorily required coverage and will instead substitute the Medicare fee schedules as the exclusive form of reimbursement.
> Dozens of courts have weighed in on the meaning of the language at issue in this appeal, and there is a sharp divide as to

- 16 -

whether the language is legally sufficient to invoke utilization of the Medicare fee schedules and thereby meet its statutory duty to provide clarity and specificity. And to be sure, Allstate owns the burden to avoid latent ambiguity. See [Wash. Nat'l Ins. Co. v.] Ruderman, 117 So. 3d [943,] 950 [(Fla. 2013)] (recognizing, with regard to ambiguous language, that " '[i]t has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer' " (quoting Berkshire Life Ins. Co. v. Adelberg, 698 So. 2d 828, 830 (Fla. 1997))). While we recognize that a lack of consensus among the courts does not raise a presumption of ambiguity, it would be disingenuous for us to say that this widespread debate does not make us question Allstate's suggestion that its policy is, as it argues, "crystal clear." As Judge Klein said in State Farm Fire & Casualty Insurance Co. v. Deni Associates of Florida, Inc., 678 So. 2d 397, 408 (Fla. 4th DCA 1996): "If Judges learned in the law can reach so diametrically conflicting conclusions as to what the language of the policy means, it is hard to see how it can be held as a matter of law that the language was so unambiguous that a layman would be bound by it."

Orthopedic Specialists, 177 So. 3d at 26.

The Amicus Brief of the Florida Medical Association, in support of the medical provider, explains in detail both the history of Florida's PIP statute and its many amendments and the dilemma posed by this ambiguous policy provision, which allows Allstate to select any method of reimbursement rather than exclusively electing the Medicare fee schedule. As the Amicus states in explaining the importance of clarity in the PIP carrier's election of a fee schedule:

> The election as to which payment methodology is utilized by Allstate is critical to the medical profession and carries with it ramifications that directly affect physician reimbursements and the doctor patient relationship. For example, if an insurer elects the fact

dependent method of subsection (5)(a)1 to calculate benefits, the physician is still permitted to charge and is in a position to collect what the physician considers a reasonable amount for their services. On the other hand, if an [sic] PIP insurer properly elects the fee schedule method of subsections (5)(a)2 the physician is limited to a payment that may be below the cost of rendering the care or in a worst case scenario to no compensation if the treatment is "not reimbursable under Medicare or workers' compensation." See § 627.736(5)(a)2.f. The physician further is prohibited from balance billing their patients. See § 627.736(5)(a)5. In short, the fee schedule amount is a "take it-or leave it" proposition.

Unfortunately, the practice of medicine requires physicians to make some difficult choices. One of those is whether it can continue to treat patients based on certain reimbursement rates. Under traditional health insurance a provider may enter into a managed care network agreement with a health insurance company and agrees to reduce its rates, it does so in exchange for different forms of consideration. There is an opportunity for additional business and the provider has none of the procedural obstacles that face providers who agree to treat automobile accident insureds.

Until the enactment of the permissive fee schedule, medical providers knew that No-Fault insurance was one of the last bastions of first party coverage where reimbursement was based solely on reasonable charges. If a provider felt that its charge was reasonable, it knew that the insurer will have to pay based on that amount or the provider had the right to challenge the insurer's determination in court. It was this trade-off that made the "red-tape" inherent in complying with the PIP statute—or to engage in first and third party litigation—somewhat economical to the provider. If, however, the reimbursement will be limited, each provider will have to decide whether the meager amounts payable under the fee schedules are sufficient to justify the "red tape", limitations and requirements inherent in providing services to an injured accident victim.[n.9]

[N.9] Several appellate court decisions have recognized, the disparity between payment under the "fee schedule method" that pays much lower benefits (commensurate with meager Medicare rates) than would be payable under the "fact based payment method." See Geico Indem. Co. v. Physicians Grp. LLC, 47 So. 3d 354, 356

(Fla. 2d DCA 2010) (PIP insurer unlawfully relied on Medicare fee schedules to pay merely $1,122.86 for a $10,800 surgery); Nationwide Mutual Ins. Co. v. AFO Imaging, Inc., 71 So. 3d 134, 137 (Fla. 2d DCA 2011) (fee schedule method is "utilized in computing the minimum amount" payable by PIP); [Allstate Fire & Cas. Ins. Co. v.] Stand-Up MRI, [188 So. 3d 1, 3 (Fla. 1st DCA 2015)] (fact dependent reasonable amount method "apparently results in higher reimbursements" than permissive fee schedule method).

Br. of Amicus Curiae Fla. Medical Ass'n (Mar. 11, 2016), at 14-16.

Due to the ramifications a PIP carrier's fee schedule selection has on physicians, as the Amicus explained, and the resulting importance that policies be "clear and unambiguous," as our precedent requires, I agree with the Fourth District that "the language at issue is ambiguous and . . . must therefore be construed in favor of the Providers." Orthopedic Specialists, 177 So. 3d at 26.

LEWIS, J., and PERRY, Senior Justice, concur.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fourth District - Case No. 4D14-287

(Palm Beach County)

Suzanne Youmans Labrit and Douglas Gerard Brehm of Shutts & Bowen LLP, Tampa, Florida; Peter J. Valeta of Cozen O'Connor, Chicago, Illinois; and Richard C. Godfrey of Kirkland & Ellis, LLP, Chicago, Illinois,

for Petitioner

Gary M. Farmer and Gary Michael Farmer, Jr. of Farmer Jaffe Weissing Edwards Fistos & Lehrman P.L., Fort Lauderdale, Florida; David Michael Caldevilla of De La Parte & Gilbert, P.A., Tampa, Florida; and Stephen Douglas Deitsch and Lindsay Capri Porak of Deitsch & Wright, P.A., Lake Worth, Florida,

    for Respondents

Edward Herbert Zebersky of Zebersky Payne, LLP, Fort Lauderdale, Florida; and Lawrence Mark Kopelman of Lawrence M. Kopelman, P.A., Fort Lauderdale, Florida,

    for Amicus Curiae Florida Medical Association