# Supreme Court of Florida

_____

No. SC18-1390

_____

**MRI ASSOCIATES OF TAMPA, INC., etc.,**
Petitioner,

vs.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
Respondent.

December 9, 2021

PER CURIAM.

In this case we consider whether the provisions of a personal injury protection (PIP) insurance policy permit the insurer to limit reimbursement payments in accordance with a statutory schedule of maximum charges. We accepted jurisdiction to review *State Farm Mutual Automobile Insurance Co. v. MRI Associates of Tampa, Inc.,* 252 So. 3d 773 (Fla. 2d DCA 2018), which certified a question of great public importance related to its holding that State Farm's policy provisions permitted the insurer to use the schedule of maximum charges even though the policy also refers to the use of

other statutory factors for determining reasonable charges. *See* art. V, § 3(b)(4), Fla. Const. We agree with the Second District Court of Appeal that the PIP policy issued by State Farm was effective to authorize the use of the schedule of maximum charges under the relevant provisions of section 627.736(5), Florida Statutes (2013).

This is the third time in the last decade that we have considered a case in which a medical services provider, as the assignee of an insured's PIP policy benefits, challenged an insurer's use of the PIP statutory schedule of maximum charges. In *Geico General Insurance Co. v. Virtual Imaging Services, Inc.*, 141 So. 3d 147 (Fla. 2013), we interpreted amendments to the PIP statute that became effective in 2008 authorizing the use of the schedule of maximum charges. We held that under that version of the PIP statute "a PIP insurer cannot take advantage of the Medicare fee schedules to limit reimbursements without notifying its insured by electing those fee schedules in its policy." *Id.* at 160. Subsequently, in *Allstate Insurance Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975 (Fla. 2017)—applying the same statutory provisions—we upheld the sufficiency of a policy notice providing that PIP payments "shall be subject to any and all limitations,

authorized by section 627.736, or any other provisions of the Florida Motor Vehicle No-Fault Law, as enacted, amended or otherwise continued in the law, including, but not limited to, all fee schedules." In the case now on review, we consider the sufficiency of a policy notice governed by the terms of a statutory notice provision that became effective in 2012.

In explaining our decision, we begin with a review of the pertinent statutory provisions followed by an examination of the relevant terms of the PIP policy. We then briefly consider the proceedings below and the decision of the district court, including the specific question certified. After a summary of arguments presented by petitioner MRI Associates challenging that decision, along with opposing argument presented by respondent State Farm, we explain why the policy provisions clearly and unambiguously authorize the use of the statutory schedule of maximum charges in accord with the requirements of the statute.

**I.**

Subject to certain conditions and limitations, section 627.736(1)(a) provides generally that PIP medical benefits must cover "[e]ighty percent of all reasonable expenses for medically

necessary medical, surgical, X-ray, dental, and rehabilitative services." Section 627.736(5) contains detailed provisions regarding "[c]harges for treatment of injured persons." Subsection (5)(a) begins with the statement that medical providers "rendering treatment to an injured person for a bodily injury covered by personal injury protection insurance may charge the insurer and injured party only a reasonable amount pursuant to this section for the services and supplies rendered." Following this broad statement, subsection (5)(a) contains two major elements. The first element is centered on an enumeration of various factors that may be considered in determining the reasonableness of charges. The second element sets forth the schedule of maximum charges that may be used to limit reimbursement and provisions related to the application of that schedule.

The first major element of subsection (5)(a) begins with a statement that reasonable charges "may not exceed the amount the [provider] customarily charges for like services or supplies." Subsection (5)(a) then sets forth the following provision regarding factors that may be used in determining reasonable charges:

> In determining whether a charge for a particular service, treatment, or otherwise is reasonable, consideration may be given to evidence of usual and customary charges and payments accepted by the provider involved in the dispute, reimbursement levels in the community and various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages, and other information relevant to the reasonableness of the reimbursement for the service, treatment, or supply.

This provision is followed by section 627.736(5)(a)1., which begins the second major element of the subsection and is central to the dispute in this case. Under this provision, "*[t]he insurer may limit reimbursement to 80 percent of [the listed] schedule of maximum charges*" set forth in subsection (5)(a)1.a.-f. (Emphasis added.) Provisions governing the application of the schedule of maximum charges are detailed in subsection (5)(a)2.-5. Of particular significance, subsection (5)(a)5. requires that an insurer provide notice of its election to use the schedule of maximum charges:

> Effective July 1, 2012, an insurer *may limit payment* as authorized by this paragraph only if the *insurance policy includes a notice* at the time of issuance or renewal *that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph.*

(Emphasis added.)

## II.

State Farm's PIP policy recognizes the statutory obligation to pay reasonable charges: "We will pay in accordance with the No-Fault Act properly billed and documented reasonable charges for bodily injury to an insured caused by an accident resulting from the ownership, maintenance, or use of a motor vehicle . . . ." The policy includes a definition of reasonable charges that refers specifically to the schedule of maximum charges:

> Reasonable Charge, which includes reasonable expense, means an amount determined by us to be reasonable in accordance with the No-Fault Act, considering *one or more of the following*:
>
> 1. usual and customary charges;
> 2. payments accepted by the provider;
> 3. reimbursement levels in the community;
> 4. various federal and state medical fee schedules applicable to motor vehicle and other insurance coverages;
> 5. *the schedule of maximum charges in the No-Fault Act*[;]
> 6. other information relevant to the reasonableness of the charge for the service, treatment, or supply; or
> 7. Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, if the coding policy or payment methodology does not constitute a utilization limit.

(Emphasis added.)  The policy contains an additional provision referring to the schedule of maximum charges:

We will limit payment of Medical Expenses described in the Insuring Agreement of this policy's No-Fault Coverage to 80% of a properly billed and documented reasonable charge, but *in no event will we pay more than 80% of the following No-Fault Act "schedule of maximum charges"* including the use of Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers: [reciting statutory schedule].

(Emphasis added.)

## III.

In a dispute over the amount of payments due for MRIs arising from nineteen individual PIP claims, a final judgment adverse to State Farm was entered by the trial court on "the issue of whether State Farm's policy 'lawfully invokes the schedule of maximum charges . . . set forth in section 627.736(5)(a)(1).' " *MRI Assocs.*, 252 So. 3d at 774 n.1. On appeal, the Second District addressed petitioner's argument "that State Farm must elect either the reasonable charge method of calculation under section 627.736(5)(a) or the schedule of maximum charges method of calculation under section 627.736(5)(a)(1) and that because its policy includes both, State Farm relies on an 'unlawful hybrid method' of reimbursement calculation." *Id.* at 775-76. The court also considered petitioner's claim that State Farm's attempt to use

this "unlawful" method requires that it "use the reasonable charge method as outlined in the definitions section of its policy and section 627.736(5)(a)." *Id.* at 776.

Based on the policy and statutory provisions that we have already set forth above, the Second District recognized that "[t]he State Farm policy tracks the method of reimbursement calculation outlined in section 627.736(5)(a) and the limitation set forth in section 627.736(5)(a)(1)." *Id.* at 775 (footnote omitted). After discussing our decisions in *Virtual Imaging* and *Orthopedic Specialists*, the district court pointed out that neither decision "applies to policies created after the 2012 amendment to the PIP statute, which the State Farm policy at issue in this case was." *Id.* at 777. But in refuting the challenge to the legality of State Farm's policy provisions, the district court relied on our statement in *Orthopedic Specialists* "that the insurer's 'PIP policy cannot contain a statement that the insurer will not pay eighty percent of reasonable charges because no insurer can disclaim the PIP statute's reasonable medical expenses coverage mandate.' " *Id.* (quoting *Orthopedic Specialists*, 212 So. 3d at 977). And in its discussion of our decision in *Virtual Imaging*, the district court

- 8 -

focused on the manner in which the statute we interpreted there was organized: "By placing the reasonable charge method and the fee schedules limitation in two separate but coequal subsections of 627.736(5)(a)"—that is, subsections (5)(a)1. and (5)(a)2.—"the legislature created two distinct reimbursement calculation methodologies." *Id.* at 776.

Relying on that understanding, the district court pointed out that "[i]n 2012 the legislature substantially amended section 627.736(5), setting forth the schedule of maximum charges limitation as a subsection of the reasonable charge calculation methodology"—by moving the provision enumerating various factors for determining reasonableness (characterized by the district court as the reasonable charge method) from subsection (5)(a)1. to subsection (5)(a) and moving the schedule of maximum charges from subsection (5)(a)2. to subsection (5)(a)1. *Id.* at 777-78. From this reorganization of the statute, the district court concluded "that there are no longer two mutually exclusive methodologies for calculating the reimbursement payment owed by the insurer." *Id.* at 778.

Reasoning that "an insurer may not disclaim the fact-dependent calculation"—that is, use of the factors for determining reasonableness enumerated in subsection (5)(a)—but "it may elect to limit its payment in accordance with the schedule of maximum charges under subsection (5)(a)(1)(a)-(f)," the district court rejected the "argument that State Farm's policy contains an 'unlawful hybrid method' of reimbursement calculation and is therefore impermissibly vague." *Id.* The district court thus concluded that "State Farm's inclusion of the statutory factors in its definition of reasonable charges tracks the PIP statute and is not inconsistent with the policy language limiting reimbursement to the schedule of maximum charges." *Id.*

The district court completed its analysis by focusing on the reference in the policy to the schedule of maximum charges:

> State Farm's policy clearly and unambiguously states that "in no event will *we* pay more than 80% of the . . . *No-Fault Act* 'schedule of maximum charges.' " The policy also includes language virtually identical to that of section 627.736(5)(a)(1)(a)-(f), listing verbatim all of the applicable fee schedules that it will use to limit reimbursement.

*Id.* And the district court compared this policy language to the policy provision we approved in *Orthopedic Specialists*: "State

Farm's policy language is even more clear and unambiguous than that at issue in *Orthopedic Specialists*, which 'state[d] that "[a]ny amounts payable" for medical expense reimbursements "shall be subject to any and all limitations, authorized by section 627.736, . . . including . . . all fee schedules." ' " *Id.* (alterations in original) (quoting *Orthopedic Specialists*, 212 So. 3d at 977).

Finally, the district court certified the following question of great public importance:

> DOES THE 2013 PIP STATUTE AS AMENDED PERMIT AN INSURER TO CONDUCT A FACT-DEPENDENT CALCULATION OF REASONABLE CHARGES UNDER SECTION 627.736(5)(a) WHILE ALLOWING THE INSURER TO LIMIT ITS PAYMENT IN ACCORDANCE WITH THE SCHEDULE OF MAXIMUM CHARGES UNDER SECTION 627.736(5)(a)(1)?

*Id.* at 778-79.

## IV.

Unremarkably, the arguments the parties present to us center on the analysis adopted by the district court. MRI Associates contends—as it did in the district court—that section 627.736(5)(a) contains two mutually exclusive methods of calculating the amount of reasonable reimbursement—namely, (1) the method set forth in subsection (5)(a)'s enumeration of factors for determining

- 11 -

reasonableness, and (2) the maximum schedule of charges set forth in subsection (5)(a)1.  MRI Associates further contends that State Farm's election to use the limitations of the schedule of maximum charges in subsection (5)(a)1. was improper because the policy also referred to the use of factors enumerated in subsection (5)(a)—described in the certified question as "a fact-dependent calculation of reasonable charges."  According to MRI Associates, the policy's adoption of an improper "hybrid-payment methodology" was nugatory and the use by State Farm of the schedule of maximum charges is therefore precluded.  Relying on our decision in *Orthopedic Specialists*, State Farm counters by arguing that there is no basis for condemning its policy for adopting an illegal hybrid payment methodology.  State Farm emphasizes that the schedule of maximum charges is designed to operate as a limitation on reimbursement—imposing a cap on the amount of payments otherwise payable—rather than a provision that must operate in isolation from the other provisions of the statute related to the determination of reasonableness.[1]

---

1.  The parties present other arguments that are either without merit or need not be addressed to resolve the issue

## V.

"Because the question presented requires this Court to interpret provisions of the Florida Motor Vehicle No-Fault Law—specifically, the PIP statute—as well as to interpret the insurance policy, our standard of review is de novo." *Virtual Imaging*, 141 So. 3d at 152.

When "interpreting an insurance contract," this Court is "bound by the plain meaning of the contract's text." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011). We are similarly bound by the plain meaning of the text of the provisions of the PIP statute. We thus are guided by "what Justice Thomas has described as the 'one, cardinal canon [of construction] before all others'—that is, we 'presume that a legislature says in a statute what it means and means in a statute what it says there.'" *Page v. Deutsche Bank Tr. Co. Americas*, 308 So. 3d 953, 958 (Fla. 2020) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). On the question presented here—which ultimately

presented by this case. We will not further comment on those arguments.

- 13 -

turns on the interpretation of the PIP statute—we conclude that the meaning of the governing text is clear beyond any doubt.

We have never held that the "reasonable charge method" and the "schedule of maximum charges" are mutually exclusive methods for determining the reasonableness of reimbursements. Neither *Virtual Imaging* nor *Orthopedic Specialists* contains any such holding. Rather than being dictated by these precedents, the controversy in this case is readily answered by the statutory text, which contains provisions that were not applicable in those cases and that wholly undermine the notion that section 627.736(5) establishes mutually exclusive reimbursement methodologies.

The issue presented in *Virtual Imaging* was whether the insurer was required to include a specific election in its policy to use the limitations of the statutory maximum fee schedules. *Virtual Imaging*, 141 So. 3d at 150. The Court decided that such an election in the policy was required. *Id.* We reasoned that "when the plain language of the PIP statute affords insurers two different mechanisms for calculating reimbursements, the insurer must clearly and unambiguously elect the permissive payment methodology in order to rely on it." *Id.* at 158 (citing *Kingsway*

- 14 -

*Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 67-68 (Fla. 4th DCA 2011)). Because the necessary specific election was not contained in the policy at issue, the Court had no basis for deciding how a policy containing such an election would be applied. Specifically, the Court had no reason to consider and decide whether an election of the limitations of the schedule of maximum charges would preclude an insurer from relying on the other statutory factors for determining reasonableness. Our characterization in *Virtual Imaging* of the PIP statute as "afford[ing] insurers two different mechanisms for calculating reimbursements" by no means establishes that those mechanisms are mutually exclusive.

*Orthopedic Specialists* addressed the sufficiency of the policy notice provided by the insurer of its election to use statutory fee schedule limitations. *Orthopedic Specialists*, 212 So. 3d at 974. As in *Virtual Imaging*, we recognized that "when the plain language of the PIP statute affords insurers two different mechanisms for calculating reimbursements, the insurer must clearly and unambiguously elect the permissive payment methodology in order to rely on it." *Id.* at 977 (quoting *Virtual Imaging*, 141 So. 3d at

158). The focus of our analysis was whether the policy notice was ambiguous—a question not at issue in the case now on review—and therefore should be interpreted against the insurer. Having decided that the broad notice contained in the policy was sufficient and that the insurer was therefore entitled to rely on the fee schedule limitations, we were not called on to decide how the policy would otherwise be applied.

Of course, here we are addressing a version of the statute that we have not previously interpreted. Although we are not persuaded that the reorganization of the statute relied on by the Second District is a sound basis for determining the issue presented in this case, we do believe that the text of the notice provision that became effective in 2012 supports the result reached by the district court. That portion of the statute provides:

> Effective July 1, 2012, an insurer *may limit payment* as authorized by this paragraph only if the *insurance policy includes a notice* at the time of issuance or renewal *that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph.*

§ 627.736(5)(a)5., Fla. Stat. (emphasis added).

This notice provision—providing that "an insurer *may* limit payment" if the policy contains notice that "the insurer *may* limit

- 16 -

payment pursuant to the schedule of charges"—cannot be reconciled with the argument that an election to use the limitations of the schedule of maximum charges precludes an insurer's reliance on the other statutory factors for determining the reasonableness of reimbursements. The permissive nature of the statutory notice language does not in any way signal that the insurer will be so constrained by such an election. On the contrary, the language signals that the insurer is given an option that may be used in addition to other options that are authorized. This notice language echoes the underlying authorization to limit reimbursements under the schedule of maximum charges: "The insurer *may limit* reimbursement to 80 percent of the [listed] schedule of maximum charges." § 627.736(5)(a)1., Fla. Stat. (emphasis added). Given the full context of these provisions, a reasonable reading of the statutory text requires that reimbursement *limitations* based on the schedule of maximum charges be understood—as State Farm contends—simply as an optional method of capping reimbursements rather than an exclusive method for determining reimbursement rates. By its very nature, a limitation based on a schedule of maximum charges establishes a ceiling but not a floor.

We rephrase the certified question as follows:

Does section 627.736(5)(a), Florida Statutes (2013), preclude an insurer that elects to limit PIP reimbursements based on the schedule of maximum charges from also using the separate statutory factors for determining the reasonableness of charges?

We answer this question in the negative.

## VI.

We therefore reject the argument that State Farm has used a prohibited hybrid-payment methodology, and we approve the result reached by the Second District. No basis has been presented for invalidating State Farm's election of the limitations of the schedule of maximum charges.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
GROSSHANS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal Direct Conflict of Decisions/Certified Great Public Importance

Second District – Case No. 2D16-4036

(Hillsborough County)

David M. Caldevilla of de la Parte & Gilbert, P.A., Tampa, Florida; Kristin A. Norse and Stuart C. Markman of Kynes, Markman & Felman, P.A., Tampa, Florida; Craig E. Rothburd of Craig E. Rothburd, P.A., Tampa, Florida; Scott R. Jeeves of Jeeves Law Group, P.A., St. Petersburg, Florida; and John V. Orrick, Jr. of Law Offices of John V. Orrick, P.L., Tampa, Florida,

     for Petitioner

Marcy Levine Aldrich and Nancy A. Copperthwaite of Akerman LLP, Miami, Florida; Chris W. Altenbernd of Banker Lopez Gassler P.A., Tampa, Florida; and D. Matthew Allen of Carlton Fields Jorden Burt P.A., Tampa, Florida,

     for Respondent

Mac S. Phillips of Phillips Tadros, P.A., Fort Lauderdale, Florida; Kenneth J. Dorchak of Buchalter, Hoffman & Dorchak, North Miami, Florida; Stuart L. Koenigsberg of Stuart L. Koenigsberg, P.A. Miami, Florida; and Melisa L. Coyle of The Coyle Law Firm, P.A., Miami Beach, Florida,

     for Amicus Curiae Floridians for Fair Insurance, Inc.

Edward H. Zebersky of Zebersky Payne Shaw Lewenz, LLP, Fort Lauderdale, Florida; and Lawrence Kopelman of Lawrence M. Kopelman, P.A., Plantation, Florida,

     for Amicus Curiae Florida Medical Association

Maria Elena Abate of Colodny Fass, Sunrise, Florida, and L. Michael Billmeier, Jr. of Colodny Fass, Tallahassee, Florida,

     for Amici Curiae American Property Casualty Insurance Association and Personal Insurance Federation of Florida