DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

PEOPLE'S TRUST INSURANCE COMPANY,

Appellant,

v.

JOHN L. ABRAHAM and LOIS ABRAHAM,

Appellees.

No. 2D2023-2383

_____

May 7, 2025

Appeal from the Circuit Court for Sarasota County; Andrea McHugh and
Hunter W. Carroll, Judges.

Mark D. Tinker and Brandon J. Tyler of Cole, Scott & Kissane, P.A.,
Tampa; and Brett Frankel and Jonathan Sabghir of People's Trust
Insurance Company, Deerfield Beach, for Appellant.

Justin R. Falatek and Aaron B. Thalwitzer of Gordon & Thalwitzer, Cocoa
Beach, for Appellees.


KHOUZAM, Judge.

    People's Trust Insurance Company timely appeals a final judgment
entered in favor of Insureds John and Lois Abraham. Because the trial
court misconstrued the governing statutes and the subject policy, we
reverse and remand for entry of judgment for the Insurer.

## BACKGROUND

The facts are undisputed.

The Policy

The parties entered into a homeowner's insurance policy containing an endorsement giving the Insurer the option to repair covered losses in lieu of issuing a loss payment. The policy identifies that the contractor for any such repairs will be Rapid Response Team, LLC (RRT).

Where the Insurer elects to repair the property instead of to pay the Insured, the policy provides that the Insureds must, as relevant here, provide access to the property and "execute all work authorizations to allow contractors and related parties entry to the property." In such circumstances, the Insureds also must pay the deductible to RRT.

In turn, the Insurer agreed, among other things, to "instruct" RRT to provide the Insureds with documentation concerning RRT's licensure and insurance. The policy also provides that the Insurer "may, at [its] option, assist [RRT] by providing the documentation." But no provision of the policy obligates the Insurer to itself provide RRT's documentation.

The Claim

The Insureds made a claim under the policy, after which the Insurer inspected, accepted coverage, and timely invoked its option to repair rather than pay. An appraisal set the scope of the repairs for the home, the majority of which concerned damage to the roof.

Pursuant to the policy, the Insurer sent the Insureds a Work Authorization document to sign and thereby "begin the repair process." The Work Authorization identified RRT as the general contractor and gave permission for RRT and its subcontractors to enter the property during reasonable business hours, as discussed and agreed to in advance, in order to repair the property pursuant to the parties' policy.

2

Despite having expressly agreed in the policy to sign such a Work Authorization, the Insureds failed to do so. Instead, they simply ignored the Insurer's correspondence. They also failed to pay the deductible.

Ultimately, the Insureds never signed the Work Authorization or paid the deductible, notwithstanding several more requests to do so by the Insurer over the following months. Most of these requests explained that the Insureds' failure to execute the Work Authorization and pay the deductible constituted material breaches of the policy.

The Litigation

Unable to begin the repairs, the Insurer brought a two-count action against the Insureds seeking (I) specific performance compelling their compliance with the repair-election provisions of the policy or, in the alternative, (II) a declaratory judgment either setting forth the rights and requirements under the policy or voiding coverage for breach.

Eventually, the Insurer moved for summary judgment, contending that the Insureds' failures to execute the Work Authorization and to pay the deductible constituted material breaches of the policy. In response, the Insureds did not dispute that they had failed to execute a Work Authorization and to pay the deductible.

Instead, the Insureds maintained that signing the Work Authorization would be illegal because the majority of the repairs concerned the roof, whereas RRT "only holds a general contractor's license and is not a certified roofing contractor." They contended that the Insurer was "ask[ing] that the Court force [the Insureds] to be a party to, and the Court to aid [the Insurer] in committing the statutorily-prohibited criminal offense of unlicensed contracting." The Insureds also said the Insurer breached the policy by failing "to provide any documents evidencing that RRT possesses a roofing license."

3

The trial court denied the Insurer's motion. Although the court agreed with the Insurer that "[f]ailure to execute a work authorization and refusal to pay the deductible is a breach of the insurance policy and constitutes a forfeiture of the policy," it ultimately agreed with the Insureds that the Work Authorization contemplated an illegal contract.

Specifically, the court ruled that the Insurer "cannot require [the Insureds] to contract with RRT, a general contractor, for roofing repairs because RRT does not have a roofing contractor's license." Because the majority of the repairs concern the Insureds' roof, the court said that executing the Work Authorization would violate section 489.113, Florida Statutes (2021), which governs contractor qualifications.

With respect to the licensure documentation, the court also ruled for the Insureds. In particular, without citing any policy language, the trial court ruled that "[t]he policy does require [the Insurer] to cause RRT to provide" licensure documentation. (Emphasis added.)

After the summary judgment ruling, the Fourth District issued its decision in *People's Trust Insurance Co. v. Lamolli*, 352 So. 3d 890 (Fla. 4th DCA 2022). That case reversed a judgment for the insured that had been based on RRT's lack of a roofing license, holding instead that RRT was permitted to use licensed roofing subcontractors. *Id.* at 895.

In light of *Lamolli*, the Insurer moved for reconsideration of the summary judgment ruling. Because *Lamolli* held that the same general contractor was permitted to oversee roofing work for the same insurer under the same statute now invoked by the Insureds, the Insurer contended that *Lamolli* illustrated its entitlement to summary judgment.

At a hearing before a successor judge, the Insureds conceded that RRT can subcontract work under the policy, but maintained that *Lamolli* did not govern because it addressed subsection (3) of section 489.113,

4

whereas their argument was based instead on subsection (9)(a).  The successor judge denied reconsideration and later entered final declaratory judgment for the Insureds based on the prior judge's findings in the order denying summary judgment.  This appeal followed.

## ANALYSIS

"This court reviews a final summary judgment de novo."  *State Farm Mut. Auto. Ins. v. MRI Assocs. of Tampa*, 252 So. 3d 773, 776 (Fla. 2d DCA 2018) (citing *Motzenbecker v. State Farm Mut. Auto. Ins.*, 123 So. 3d 600, 602 (Fla. 2d DCA 2013)).  Issues of statutory and contractual interpretation are likewise reviewed de novo.  *Id.* (citing *Allstate Ins. v. Orthopedic Specialists*, 212 So. 3d 973, 975 (Fla. 2017)).

This case presents two narrow questions of interpretation, one statutory and one contractual.

Contractor Licensure under Florida Statutes

The trial court's primary ruling was that the Work Authorization contemplated by the parties' policy would violate section 489.113 because the majority of the repair work concerns a roof, but RRT has only a general contractor's license—not a roofing license.  But nothing in the relevant statutes supports this interpretation.

The terms at issue are defined by statute.  A "contractor" is "the person who is qualified for, and is only responsible for, the project contracted for and . . . whose job scope is substantially similar to the job scope described in one of" the particular trades described by statute.  § 489.105(3).  The legislature has specifically enumerated several different types of "contractors" falling under this umbrella.  *Id.*

One is the "general contractor," which is "a contractor whose services are unlimited as to the type of work which he or she may do, who may contract for any activity requiring licensure under this part,

5

and who may perform any work requiring licensure under this part, except as otherwise expressly provided in s. 489.113." § 489.105(3)(a).

In turn, section 489.113 sets forth qualifications and restrictions regarding construction contracting. As relevant here, it provides that "[a] contractor shall subcontract all . . . roofing . . . work, unless such contractor holds a state certificate or registration in the respective trade category." § 489.113(3). But subcontracting general contractors remain "responsible for any construction or alteration of a structural component of a building or structure." § 489.113(3)(a).

Considering this same statutory language in the specific context of the same general contractor's ability to perform roofing repairs on behalf of the same Insurer, the Fourth District unequivocally held:

> By law, a general contractor must subcontract roofing repairs where it does not have a license for such trade, but the general contractor remains responsible for any roofing construction or alteration. Thus, even if a subcontractor was used to repair the insured's roof, RRT would remain ultimately responsible for the subcontractor's work.

*Lamolli*, 352 So. 3d at 895.

Despite this clear statutory language and the well-reasoned Fourth District decision interpreting it in a nearly identical context, the Insureds nonetheless maintain that the Work Authorization would violate section 489.113 by putting a general contractor without a roofing license in charge of a job primarily consisting of roofing work. In support, the Insureds rely upon subsection (9)(a) of the statute, which provides in full:

> This part does not prevent any contractor from acting as a prime contractor where the majority of the work to be performed under the contract is within the scope of his or her license or from subcontracting to other licensed contractors that remaining work which is part of the project contracted.

The Insureds' position is flawed in several respects.

6

As a threshold matter, subsection (9)(a) is entirely permissive; it does not expressly prohibit anything. And further, no reading of its plain language prohibits general contractors from subcontracting specialty work. If we accept the Insureds' contrary interpretation, then it would contradict the express, specific requirement in section 489.113(3) that general contractors lacking a roofing license <u>shall</u> subcontract such work to licensed roofing contractors.

Moreover, before final judgment was entered in this case, the Fourth District confirmed that general contractors lacking a roofing license—including RRT specifically—are not only permitted but are in fact required by law to subcontract roofing repairs. *Lamolli*, 352 So. 3d at 895. That decision was binding on the parties here. *See Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts." (citing *Weiman v. McHaffie*, 470 So. 2d 682, 684 (Fla. 1985))).

The Insureds seek to distinguish *Lamolli* on the basis that it did not address subsection (9)(a), only subsection (3)(a). But where subsection (9)(a) does not prohibit any conduct (much less the conduct at issue in this case), it matters not whether the *Lamolli* court discussed it.

Ultimately, under both the plain statutory language and the binding precedent raised below, the Work Authorization would not violate section 489.113 simply because the general contractor lacks a roofing license.[1] The trial court erred as a matter of law in concluding otherwise.

---

[1] Because the language of subsection (9)(a) cannot be read to prohibit any of the conduct contemplated in this case, its precise meaning is beyond the scope of this opinion. However, for purposes of guidance, we note that we find persuasive the Insurer's interpretation that the subsection sets forth an exception where most of the work is within the scope of a specialty contractor's license. Considering, for example, a repair job comprised of 75% plumbing work and 25% other

<u>Documentation Obligations under the Policy</u>

The trial court also ruled that the Insurer breached the policy with respect to providing licensure documentation to the Insureds. This ruling was erroneous as a matter of law.

The policy expressly provides that the Insurer will "instruct" RRT to provide licensure documentation to the Insureds and "may, at [its] option, assist [RRT] by providing the documentation." Yet, the trial court ruled that "[t]he policy does require [the Insurer] to <u>cause</u> RRT to provide such proof." (Emphasis added.)

That was a clear misinterpretation of the policy. "If the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins.*, 845 So. 2d 161, 165 (Fla. 2003); *Siegle v. Progressive Consumers Ins.*, 819 So. 2d 732, 735 (Fla. 2002)).

Here, the Insurer expressly agreed only to "instruct" RRT to provide RRT's licensure documentation, with an "option" to "assist" in doing so. Contrary to the trial court's ruling, the Insurer did not undertake the broader duty to "cause" such production. Had the parties intended for the Insurer's failure to meet this higher burden to constitute a breach of the policy, such language could have been included therein.

## **CONCLUSION**

Because the undisputed facts establish that the Insurer was entitled to judgment as a matter of law, we reverse the final judgment for

---

matters, the legislature appears to have deemed it unnecessary to involve a general contractor; under this subsection, a plumbing contractor may serve as the prime contractor for the majority-plumbing project and may subcontract the minority portion beyond the scope of that licensure.

8

the Insureds and remand for entry of judgment for the Insurer consistent with this opinion.

Reversed and remanded.

ROTHSTEIN-YOUAKIM and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.